Appeal No. 12-4183

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

_____

_____

**Brent Middleton, Trustee, et al.**
Plaintiffs and Appellees
**vs.**
**J. Hoyt Stephenson**
Defendant, Counterclaimant, Third Party Plaintiff and Appellant
**vs.**
**Brent Middleton, Trustee, et al.**
Counterclaim and Third-Party Defendants and Appellees

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
THE HONORABLE TED STEWART, JUDGE
DISTRICT COURT CASE NO. 2:11-CV-00313

_____

# CORRECTED BRIEF OF APPELLANT J. HOYT STEPHENSON
_____

ORAL ARGUMENT REQUESTED

David K. Isom  (Utah 4773)
ISOM LAW FIRM PLLC
299 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 209 7400

Attorney for Defendant-Appellant
J. Hoyt Stephenson

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................3

STATEMENT OF PRIOR OR RELATED APPEALS............................5

JURISDICTIONAL STATEMENT .......................................................5

STATEMENT OF THE CASE...............................................................6

STATEMENT OF THE FACTS .............................................................7

SUMMARY OF THE ARGUMENT .....................................................25

ARGUMENT .........................................................................................25

   I.    This Court Should Reverse the District Court's Finding that Stephenson Is Domiciled in Utah Because He Has Physical Presence and Intent to Remain in Wyoming. ...............................................................................................25

      A.   Standard of Review ................................................................25

      B.   Domicile Is Determined by Physical Presence in a State and Intent to Remain There ......................................................................................26

      C.   Appellees Failed to Show that Stephenson Changed His Domicile to Utah. ........................................................................................................26

      D.   Stephenson Met His Burden to Establish Diversity Jurisdiction.............38

      E.   The District Court Misapprehended the Presumptions, Resulting in its Erroneous Conclusion That Stephenson is a Utah Citizen. ...........................55

CONCLUSION.......................................................................................56

ORAL ARGUMENT ..............................................................................57

CERTIFICATE OF COMPLIANCE......................................................58

CERTIFICATE OF DIGITAL SUBMISSION ......................................59

CERTIFICATE OF SERVICE ...............................................................60

MEMORANDUM DECISIONS AND ORDERS FROM TRIAL COURT ..........61

# TABLE OF AUTHORITIES

## CASES

*Bair v. Peck*, 738 F. Supp. 1354 (D. Kansas 1990) ............................... 27, 29, 33, 43

*Bank One, Texas, N.A. v. Montle,* 964 F. 2d 48 (5th Cir. 1992)....................... 35, 36

*Basso v. Utah Power & Light Co.*, 495 F.2d 906 (10th Cir. 1974) ........................57

*Ceglia v. Zuckerberg*, 772 F.Supp.2d 453 (W.D.N.Y. 2011)..................................36

*City of Lawton, Okl. v. Chapman*, 257 F.2d 601 (10th Cir. 1958) .........................57

*Computer People, Inc. v. Computer Dimensions Int'l, Inc.*, 638 F. Supp. 1293
    (M.D. La. 1986) ................................................. 44, 45, 46, 48, 50, 51, 52, 53, 54

*Coury v. Prot*, 85 F.3d 244 (5th Cir. 1996) .............................................................29

*Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol North American, Inc.,* 2012 U.S.
    Dist. LEXIS 83524 (W.D. La., June 14, 2012) ..................................................36

*Cressler v. Neuenschwander*, 930 F. Supp. 1458 (D. Kan. 1996).............. 41, 50, 52

*Crowley v. Glaze*, 710 F.2d 676 (10th Cir. 1983).......................... 27, 33, 35, 40, 43

*Desmare v. United States,* 93 U.S. 605 (1877)......................................................32

*District of Columbia v. Murphy*, 314 U.S. 441 (456) ................................ 40, 41, 45

*Dyer v. Robinson*, 853 F. Supp. 169 (D.Md. 1994)................................................50

*Freeport-McMoRan Inc. v. K N Energy, Inc.,* 498 U.S. 426 (1991) .......................32

*Johnston v. Cordell National Bank*, 421 F.2d 1310 (10th Cir. 1970) ....................27

*Kelleam v. Maryland Casualty Co. of Baltimore*, 112 F.2d 940 (10th Cir. 1940) ..29

*Kramer v. Sears Roebuck and Co.*, 108 F.3d 1388 (10th Cir. 1997) ......................30

*Lew v. Moss*, 797 F.2d 747 (9th Cir. 1986) ..........................................................29

*Liakakos v. Cigna Corp.* 704 F. Supp. 583 (E.D. Pa. 1988)....................................36

*Martin v. Unit Rig & Equipment Co., Inc.*, 715 F.2d 1434 (10th Cir. 1983) ..........37

*Martinez v. Bynum,* 461 U.S. 321 (1983) ..............................................................34

*Mas v. Perry*, 489 F.2d 1396 (5th Cir. 1974)................................................... 48, 49

*McCann v. Newman Irrevocable Trust,* 458 F.3d 281 (3d Cir. 2006)........ 32, 33, 36

*Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989)................27

*Mitchell v. U.S.*, 88 U.S. 350 (1874).................................................... 29, 30, 43, 56

*Palazzo v. Corio,* 232 F.3d 38 (2d Cir. 2000)................................................... 34, 36

*Smith v. Cummings,* 445 F.3d 1254 (10th Cir. 2006) ...................................... 32, 34

*Spindel v. Spindel,* 283 F. Supp. 797 (E.D. N.Y. 1968) ..........................................34

*St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993)..........................................33

*State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514 (10th Cir. 1994)26, 29, 30, 40, 55

*Stucky By & Through Stucky v. Bates*, 2 F. Supp. 2d 1434 (D. Kan. 1998)............45

*United States v. Scott*, 472 F. Supp. 1073 (D.C. Ill. 1979)......................................44

*Washington v. Hovensa LLC,* 652 F.3d 340 (3d Cir. 2011) ...................... 35, 36, 38

*Whitelock v. Leatherman*, 460 F.2d 507 (10th Cir. 1972) ......................................27

*Wilson v. Pickens,* 444 F. Supp. 53 (W.D. Ok. 1977) .............................................34

*Wolf Mountain Resorts LC v. ASC Utah,* 2008 U.S. Dist. LEXIS 55469 (D. Utah, July 21, 2008).................................................................................... 33, 36

## STATUTES

28 U.S.C. § 1332..................................................................................................27

## OTHER AUTHORITIES

1 James W. Moore, Moore's Federal Practice ¶ 0.74[.3–4] (2d ed. 1996)..............42

5A Moore's Federal Practice ¶ 50.02 (2d ed. 1982)................................................37

Fed. R. Civ. P. 301 ................................................................................................33

## STATEMENT OF PRIOR OR RELATED APPEALS

Pursuant to 10th Cir. R. 28.2(C)(1), counsel for appellant J. Hoyt Stephenson ("Stephenson") states that there are no prior appeals, and that there is a later-filed related appeal in this Court, *National Fitness Holdings, Inc. v. Grandview Corporate Centre, LLC, et al.,* Appeal No. 12-4215.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The parties alleged, and the district court initially had and agreed that it had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1367 and 29 U.S.C. § 1132(e) (federal question jurisdiction). Stephenson also pleaded and contends here that the district court also had diversity jurisdiction pursuant to 28 U.S.C. § 1332 based upon the allegation that Stephenson was a citizen of Wyoming and no Plaintiff was a citizen of Wyoming. After the district court dismissed the federal question claims, the district court held that it lacked diversity jurisdiction based upon the conclusion that Stephenson was, along with Plaintiffs, a citizen of Utah, not of Wyoming, and declined to exercise supplemental jurisdiction over the state law claims. That ruling is the basis for this appeal. The district court issued a final order on

September 28, 2012. With this final order, the district court disposed of all parties'

claims. Stephenson timely filed his Notice of Appeal on October 29, 2012.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.    Whether the district court erred in finding that Stephenson was a citizen of

Utah and not Wyoming where Plaintiffs had alleged that Stephenson resided in

Wyoming; Stephenson showed that he owned and spent significant time at his

home, operated a ranch, voted and was registered to vote, was licensed to drive,

registered his vehicles all in Wyoming; listed Wyoming as his residence on his

federal and state tax returns, banking, credit card and business documents; and

testified that he was active in civic, religious and community events and was and

intended to remain a citizen of the State of Wyoming.

II.    Whether the district court erred in switching the burdens of proof in

establishing citizenship based upon the district court's erroneous and unsupported

finding that the "parties agreed that Stephenson moved back to Utah in mid-2009."

## STATEMENT OF THE CASE

Diversity jurisdiction exists where, at the material time (normally, as here,

when the action is filed) no plaintiff is a citizen of the same state as any defendant.

Citizenship is presumed from a party's place of domicile, which is determined by

physical presence and intent to remain in a state. When this action was initiated,

6

and now,[1] Stephenson owns a home, operates a ranch, holds a driver's license, maintains current vehicle registrations, and lists on his federal and state tax returns, bank-account and credit card statements addresses in Wyoming; he has also voted as a Wyoming resident since 2007 and he has attended and continues to attend regular civic, religious and community events in Wyoming.

Despite these unchallenged facts, the district court found that Stephenson is a Utah citizen and denied diversity jurisdiction even though Stephenson does not own a residence in Utah, does not hold a Utah Driver's License, is not registered to vote in nor does he vote in Utah, does not list a Utah address for his personal bank accounts, credit cards and business documents and does not register his personal car and truck in Utah. For the reasons set forth below, Stephenson requests that the Court reverse the decision of the district court and remand for further consideration within the parameters set by this Court.

## STATEMENT OF THE FACTS

**The Parties and Background**

In June 2006, J. Hoyt Stephenson ("Stephenson") and his wife and family moved from Utah to Stephenson's newly acquired home in Evanston, Wyoming.

---

[1]  Since none of the facts material to Stephenson's citizenship changed from the time the action was commenced until the present, this brief states citizenship facts in the present tense for simplicity.

Since 2007, Stephenson has consistently represented himself as a citizen of Wyoming. App. at 137.

By a purchase agreement effective June 30, Stephenson sold his companies National Financial Services, Inc. ("NFS"), Metronomics, Inc. ("Metro") and Grand View Corporate Centre, LLC ("Grandview LLC") to Bailey N. Hall ("Hall").  An amendment to this purchase agreement (as amended, the "2009 Purchase Agreement") later substituted the Thrive National Proprietorship wholly owned by Hall[2] for $12,234,818 as reflected by two promissory notes of a Purchase Agreement made effective June 30, 2009. App. at 19.

Hall also promised to assume the balance of the mortgage of approximately $2.4 million secured by land and an office building owned by Grandview LLC ("Grandview Property") under the 2009 Purchase Agreement.  *Id.* National Financial Systems Management, Inc. ("NFSM") and National Financial Systems

---

[2] The Parties amended the 2009 Purchase Agreement on or about March 3, 2010 substituting Thrive National, a sole proprietorship owned by Hall ("Thrive National Proprietorship"), as the Buyer in place of Hall and Hall became a guarantor of the two promissory notes attached as Exhibits G and H to the 2009 Purchase Agreement for the principal amounts of $10,500,000 and $1, 734, 818 respectively.  As reflected in Exhibit N to the 2009 Purchase Agreement, Hall's seven companies signed as corporate guarantors of the Buyer's payment obligations under the 2009 Purchase Agreement.  Unless the context indicates otherwise, this memorandum refers to the purchaser as "Hall," and Hall, Thrive National Proprietorship and Hall's seven companies are collectively referred to as the "Hall Parties."

Management, Inc. Employee Stock Ownership Plan ("ESOP") were also made parties to the 2009 Purchase Agreement. *Id.* at 21.

Beginning in July 2009, Hall continuously breached the escrow and payment provisions of the 2009 Purchase Agreement.  In December 2009, Hall encumbered the Escrowed Collateral held in escrow by the escrow agent in direct violation of the provisions of Section 4 of the 2009 Purchase Agreement.  In January through May 2010, Hall failed to make payments to Stephenson as promised and when promised in direct violation of the provisions of Sections 2 and 3 of the 2009 Purchase Agreement.  App. at 23-25.

On August 15, 2010, Hall breached the Forbearance Agreement and the 2009 Purchase Agreement by failing to make the approximately $1.23 million catch up payment to Stephenson as promised.  Hall's failure to make the catch up payment authorized Stephenson immediately to exercise all of his contractual, legal and equitable rights under the 2009 Purchase Agreement and the Forbearance Agreement.  App. at 25-27.

**District Court Litigation**

On March 31, 2011, the Trustee of the ESOP and other plaintiffs ("Plaintiffs") filed a lawsuit against Stephenson alleging that Stephenson violated the provisions of the Employee Retirement Income Security Act ("ERISA") and of

the Internal Revenue Code ("IRC") by engaging in prohibited transactions with the ESOP and by failing to fulfill his fiduciary duties to the ESOP.  In the Complaint, the Trustee of the ESOP alleged that Stephenson resided in Wyoming.[3]  App. at 6.

On December 8, 2011, the district court granted Stephenson partial motion for summary judgment holding that Stephenson did not violate the provisions of the Employee Retirement Income Security Act ("ERISA") and of the Internal Revenue Code ("IRC") by engaging in prohibited transactions with the ESOP and dismissed two of the Trustee of the ESOP's five claims against Stephenson. App. at 116-130 and 131-132.

**Stephenson's Counterclaims and Third Party Complaint**

On January 31, 2011, Stephenson filed Counterclaims against Plaintiffs and a Third Party Complaint naming Hall, Thrive National Corporation and others as Third Party Defendants.[4]  App. at 8-63 and 180.

**Third Party Defendants' Motion to Dismiss**

On February 29, 2012, Third Party Defendants filed a Motion to Dismiss Stephenson's Third Party Complaint on the grounds, among others, that

---

[3] The Trustee of the ESOP, the Plaintiff in the federal action, asserted in paragraph 7 of the ESOP Complaint that Stephenson was a resident of Wyoming.  App. at 7.

[4] Stephenson filed Counterclaims and Third Party Claims dated January 31, 2012. Those parties other than Stephenson who have entered an appearance in this appeal are referred to below as "Appellees."

Stephenson lacked jurisdiction to bring the Third Party Claims in the district court. App. at 181.

On March 30, 2012, Stephenson filed an Opposition to Third Party Defendants' Motion to Dismiss claiming, among other things, that the Court had jurisdiction over Stephenson's Third Party Complaint because Stephenson was a citizen of Wyoming and that there existed diversity of citizenship between the Stephenson and all other Parties in the case. App. at 184. Stephenson attached a declaration dated March 30, 2012 providing evidence that he was domiciled in Wyoming. App. at 66-68 and 184.

On April 16, 2012, Third Party Defendants filed a Reply Memorandum claiming for the first time that Stephenson was a citizen of Utah and not Wyoming. App. at 185. In their Reply, Hall submitted a declaration admitting that Stephenson was a Wyoming citizen in 2007 and 2008. App. at 82-102 and 185. But Hall alleged that Stephenson again became a citizen on Utah in mid-2009 when, according to Hall, Stephenson and his family moved back to Utah from Wyoming. App. at 85-86. But Hall's self-serving argument was not supported by meaningful evidence.  Instead, Hall relied on innuendo and naked allegations to persuade the district court that Stephenson was a Utah resident after mid-2009.

In May 2012, the Court requested both Stephenson and the Third Party Defendants to submit a Supplemental Memorandum addressing certain issues in the case that was due by May 23, 2012. App. at 185.

In response, Stephenson submitted a Supplemental Memorandum addressing the issues requested by the Court and a second declaration directly rebutting Hall's declaration and Third Party Defendants' unsupported claims in its Reply that Stephenson was a Utah resident. App. at 110-115 and 186-186. In his second declaration, Stephenson specifically rebutted and denied the self-serving and untrue allegations made by Hall in his declaration that Stephenson had moved back to Utah with his family in mid-2009 and resided in his wife's Utah Home. App. at 114.

Third Party Defendants also submitted a Supplemental Memorandum on May 23, 2012 in response to the Court's request and made further arguments that Stephenson was a Utah and not a Wyoming citizen, but submitted no further declarations. App. at 185.  Instead, Third Party Defendants attached various documents to their Supplemental Memorandum all dated prior to June 2006—the date Stephenson moved from Utah to Wyoming. App. at 133-163. Third Party Defendants argued that Stephenson was a citizen of Utah because Stephenson owned and resided in the Utah home (which had been transferred into a trust with his wife as the sole beneficiary in 2002), because Stephenson owned recreation

12

vehicles and companies located in Utah (all of which existed prior to Stephenson moving to Wyoming), and because Stephenson operated an office out of the Grandview Building through early 2012 (provided to Stephenson under the 2009 Purchase Agreement)—allegedly making Stephenson a resident of Utah.

These same facts all existed prior to June 2006 when Stephenson moved to Wyoming with the exception of the office provided to Stephenson under the 2009 Purchase Agreement.  Nothing has changed since then.

**District Court Decision**

On June 14, 2012, the district court issued a decision and an order dismissing the remaining three claims brought by the Trustee of the ESOP against Stephenson.  Of more significance here, the district court dismissed Stephenson's Third Party Complaint against Hall because the Court lacked diversity jurisdiction. The district court concluded that although "...this is a close issue...Stephenson has not carried his burden of establishing domicile in Wyoming.  It follows that complete diversity does not exist between the parties and this Court is without jurisdiction over Stephenson's state law counterclaims." App. at 116-130 and 186.

**Stephenson's Request for Reconsideration**

On July 6, 2012, Stephenson filed a Motion for Reconsideration.  However, the district court was unwilling to reconsider its prior decision, notwithstanding its errors as set forth herein. App. at 186. The district court ultimately denied

Stephenson's Motion for Reconsideration on September 28, 2012. App. at 164-167

and 187.

**Stephenson's Appeal**

On October 29, 2012, Stephenson filed a Notice of Appeal. App. at 187.

**Indicia that Stephenson Was Domiciled in Wyoming**

The district court failed to consider the following evidence submitted by

Stephenson in opposition to Third Party Defendants' Motion to Dismiss for lack of

jurisdiction in determining that Stephenson was a citizen of Utah and not

Wyoming. App. at 64-69, 110-115 and 134-150.

Stephenson purchased a home in the State of Wyoming on March 3, 2006

("Wyoming Home").  Stephenson and his family moved into the Wyoming Home

in June 2006 and Stephenson has continued to own and occupy the home ever

since, including on September 11, 2012 when this case was filed. App. at 69, 113-

114, 137-138 and 148-150.

Stephenson's wife is the sole beneficiary of the MKS Family Living Trust

("Trust"), established on March 28, 2002, which owns a home in Utah ("Utah

Home").  The MKS Family Trust acquired full rights to the Utah Home by

Warranty Deed executed March 28, 2002 and recorded with the Davis County

Recorder on April 2, 2002.  Both Stephenson and his wife are Trustees of the MKS

Family Living Trust, but Stephenson has no ownership of or beneficial interest in the Utah Home.[5] App. at 114-115 and 141.

Prior to June 2006, Stephenson also acquired an interest in some recreation vehicles, in GUS Recreation, a company that owns ski boats, and in S&M Motors, a company in the automotive business, all of which are located or registered or organized in the State of Utah. Each of these recreational or business interests existed prior to Stephenson's move to Wyoming in June 2006 and prior to his becoming a citizen of the State of Wyoming in 2007. App. at 93-103 and 106-107.

While Hall admits that Stephenson was domiciled in Wyoming in 2007 and 2008, he also claims that Stephenson again became a resident of Utah when he allegedly moved back to Utah with his wife and family in mid-2009. App. at 84-89. Hall's claims are not supported by the evidence Hall produced and are directly rebutted by Stephenson. App. at 69, 80 and 114. The fact that Stephenson owned interests in Utah that existed before and during the time Stephenson was domiciled in Wyoming cannot now be used as evidence to show that Stephenson moved back

---

[5] Hall claims that because Stephenson is a Trustee of the MKS Family Living Trust that he is an owner of the Fruit Heights Home that is held in trust for his wife, the sole beneficiary of the Trust. The argument is contrary to Trust Law and fails to recognize that that the Fruit Heights Home was transferred to the Trust in 2002, over 9 years before this case was filed and 5 years prior to 2007 when Hall admitted that Stephenson was domiciled in Wyoming.

to Utah and became a citizen of Utah again in mid-2009.  Nothing changed!  App. at 114-115 and 140-141.

Stephenson first registered his car in Wyoming on August 26, 2006 and it continues to be registered in Wyoming.  Stephenson first registered his pickup truck (a 2001 Ford) in Wyoming on December 5, 2008 and it continues to be registered in Wyoming.[6]  App. at 69, 116 and 140.

Stephenson and his family have attended a local LDS Ward (church congregation) in Evanston, Wyoming since June 2006.  Stephenson has served in various service callings in the local LDS Ward in Evanston, Wyoming since 2007.  App. at 69, 114-115, 143 and 149-150.

---

[6] Hall claims that he observed Stephenson's 1999 Jaguar with Wyoming license plates at the Grandview Property and at Stephenson's wife's home if Utah.  Hall also claims that he observed other vehicles with Utah license plates at the Fruit Heights Home.  Hall claims this as evidence that Stephenson resides in Utah.  App. at 84-89.  But see App. at 113-116.
  However, Hall has produced no substantive evidence rebutting Stephenson's claims that he owns a home in Evanston, Wyoming, that he resides in that home in Wyoming, that he owns and operates a ranch in Wyoming, that he licenses his car and truck in Wyoming, that he is registered to vote and votes in Wyoming, that he has a Wyoming driver's license, that his tax returns since 2007 reflect his address as a Wyoming address, that his bank accounts and credit cards and business documents since 2007 reflect a Wyoming address, and that he has served in the LDS Ward in Wyoming through August 2010 and continues to provide service there and that he has participated and continues to participate in community events in Evanston, Wyoming since at least 2007.  App. at 69, 113-116, 137-143 and 147-150.

Three of Stephenson's then-minor children began attending public school in Evanston, Wyoming in the fall of 2007 and have continued to attend school and community events since then.  App. at 139, 141-142 and 149-150.

Stephenson became a citizen of the State of Wyoming by 2007 and he has considered himself to be a citizen of Wyoming since then. App. at 69, 114, 138 and 150.

Stephenson's 2007, 2008, 2009, 2010 and 2011 Federal Income Tax Return show his address as: 8433 State Highway 150 South, Evanston, Wyoming 82930. Stephenson has not yet filed his Federal Income Tax Return for 2012—his filing date has been extended through October 15, 2013.  App. at 69 and 140.

Since at least 2008, Stephenson's personal bank accounts and credit cards and business documents have shown his address as:  8433 State Highway 150 South, Evanston, Wyoming 82930.  App. at 116, 138 and 141.

Stephenson obtained a Wyoming driver's license in 2008 when his Utah driver's license expired and he has not obtained a driver's license in any other state since then.  Stephenson uses his Wyoming driver's license as his primary form of identification when he travels.  App. at 69 and 140.

Stephenson registered to vote and began voting in Wyoming in 2008 and has not voted in any other state since then.  Stephenson voted in the State of Wyoming in the general elections of 2008, 2010, and 2012.  App. at 69 and 140.

Stephenson's son graduated from Evanston High School in Wyoming in the spring of 2009 and began attending Utah State University beginning in the fall of 2009 on a Wyoming State scholarship given to only Wyoming residents. Stephenson claimed his son as a dependent on his 2009 Federal Tax Return. App. at 142.

In the fall of 2009, Stephenson's wife and two minor children began spending more time in Utah in his wife's home to allow Stephenson's two minor children to attend school in Utah. App. at 141-142.

At the same time, Stephenson's wife and minor children began more regular attendance in the local LDS ward in Utah but they still continued attending church in the LDS ward in Wyoming ward on a regular basis. App. at 141-142 and 149-150.

In June 2010, Stephenson purchased and began managing and operating a ranch near Evanston, Wyoming and continues to manage and operate that ranch today.  Stephenson's children actively work with him on the ranch on weekends and holidays and during the summer months.  App. at 138-140 and 147-150.

18

In 2010, Stephenson's son submitted his papers, received his call, and departed from the local Evanston, Wyoming Ward to serve an LDS-church service mission in Mexico. Stephenson's son also reported his mission in the local LDS Ward in Evanston, Wyoming when he returned in the summer of 2012. App. at 142 and 149.

In August 2010, Stephenson received a temporary calling to serve in the LDS Stake located in Utah. App. at 87. But Stephenson also continues to provide service in the local LDS Ward in Wyoming. App. at 141-142.

**Stephenson's Current Status**

Since at least 2007, Stephenson has had a continuous presence in Wyoming and he intends to remain domiciled in Wyoming. App. at 69, 80, 114. Stephenson resides in his home in Evanston, Wyoming where he manages and operates his ranch and his businesses and spends time with his family when his minor children are not in school. Stephenson's business interests at times require him to spend time outside of Wyoming. App.at 138-142. For example, when he is providing service in the LDS Stake in Utah and when he is required to address the litigation issues with Hall, Stephenson spends time at his wife's home in Utah. Also, Stephenson spends time at his son's home in Georgia at least every two weeks where he manages his business interests there. App.at 69, 115 and 142-143.

**The District Court Committed at Least Six Errors**

The district court erred in holding that Stephenson had failed to meet his burden of proof that he was domiciled in Wyoming.  Although the district court concluded that it was a "close issue," the court ultimately decided against Stephenson and in favor of Third Party Defendants on the issue of Stephenson's domicile. App. at 130. In so holding, the district court erred in at least six ways which undermined the district court's conclusion and led to a flawed analysis. See App. at 124-137.

First, the district court erroneously found that the Parties had stipulated that Stephenson had moved back to Utah with his family in mid-2009. But the Parties made no such stipulation and the record is devoid of evidence supporting such a stipulation. App. at 124-125.  But see App. at 114.

To the contrary, Stephenson specifically and directly rebutted Hall's statement in his declaration that Stephenson had moved back to Utah with his family in mid-2009. App. at 114.  The district court failed to acknowledge Stephenson's direct rebuttal of Hall's claim that he had moved back to Utah in mid-2009 and erroneously concluded that the Parties had stipulated that Stephenson had moved back to Utah from Wyoming with his family in mid-2009. App. at 124-124; see App. at 86; but see App. at 114.

Building on this first error, the district court erred a second time by assigning the burden of proof to Stephenson to prove that he was a citizen of Wyoming rather than Utah instead of requiring Hall to prove that Stephenson was a citizen of Utah instead of Wyoming. App. at 125-126.  Where a domicile has been established (Hall admitted that Stephenson was domiciled in Wyoming in 2007 and 2008), there is a presumption that the party remains domiciled in that location.  Typically the party alleging a change in domicile must bear the burden of proof to show by a preponderance of the evidence that the alleged change in domicile occurred.

Instead, the district court erroneously assumed—based on the erroneous assumption that the parties had stipulated as much—that Stephenson had changed his domicile from Wyoming to Utah in mid-2009 and that he was domiciled in Utah on March 31, 2011. App. at 124-125. As a result, the district court assigned Stephenson the burden of proving that he had again changed his domicile from Utah to Wyoming after mid-2009. App. at 125-126 and 130.

This change in who bore the burden of proof paved the way for the third error made by the district court which erroneously adopted a "multiple-residence" test to determine, based on a gross weighing of nine factors (giving equal weight to each factor) to determining the domicile of a person with multiple residences

without giving more of less weight to important as opposed to unimportant factors. App. at 125-129.

This "multiple-residence" test adopted by the district court was based on the assumption that Stephenson had multiple residences. However, the district court failed to define what it meant by "residence" or by "multiple-residences." Moreover, the district court failed to consider that, while Stephenson admitted to spending time in Utah in his wife's home and in Georgia in his son's home, Stephenson claimed his Wyoming Home as his residence and domicile.

Building on this third error, even assuming the "multiple-residence" test was the right test to use, the district court erred a fourth time by failing to properly apply the "multiple-residence" test in this instance. The district court erred by failing "to consider all of the evidence submitted by Stephenson in analyzing each of the nine factors of its adopted "multiple-residence" test. As a result, the district court missed or ignored key pieces of evidence submitted by Stephenson that would have clearly tipped the scale towards Stephenson's claim of Wyoming domicile rather than towards the Third Party Defendants' claim that Stephenson was a resident and citizen of Utah. App. at 125-129.

One such instance of ignoring evidence submitted by Stephenson pertains to the factor "where a person votes." The district court gave weight to the Third-Party Defendants' unsupported "question" set forth in its Reply about whether

22

Stephenson had provided sufficient evidence about actually voting in Wyoming instead of just being registered to vote in Wyoming.[7]  In contrast, the district court failed to consider Stephenson's direct statement in his declaration that he was "registered to vote in Wyoming and voted in Wyoming." App. at 128.  But see App. at 69 and 140.

Building on this fourth error, the district court erred a fifth time by giving equal weight to each of the 9 factors it considered in determining residence when some factors are clearly more relevant than others in determining residence. App. at 125-129.

Finally, the district court erred a sixth time by failing to address the key issue of intent. Even assuming residence, without evidence of intent to remain at that residence, there is no domicile.  The district court erred in this instance by addressing only half of the question.  After completing its flawed analysis under the "multiple-residence" test, the district court concluded that although "...this is a close issue...Stephenson has not carried his burden of establishing domicile in Wyoming."  The district court next concluded that "[i]t follows that complete diversity does not exist between the parties and this Court is without jurisdiction over Stephenson's state law counterclaims."  App. at 130.

---

[7] See Hall's Memorandum (raises questions about the sufficiency of Stephenson's evidence but provides no evidence of his own showing that Stephenson was registered to vote or voted in Utah).

In order to properly conclude that Stephenson was domiciled in Utah, after concluding that Stephenson was a resident of Utah the court should have taken the next step and specifically addressed the issue of intent with respect to each of the nine factors. While the district court specifically discussed the issue of intent in its analysis of two of the nine factors, for the remaining seven factors, the court discussed the issue of intent solely within the context of whether the court thought the evidence supported domicile in Utah or Wyoming. App. at 125-129.

Moreover, the district court, in evaluating the first of nine factors, declared that "...the Court will not accept self-serving statements of intent that are unsupported by objective indicia." App. at 127-128. The district court then went on to reject Stephenson's specific expressions of intent as stated in his two declarations even though they were supported by objective criteria while adopting Hall's self-serving statements set forth in his only declaration even though they were not supported by objective criteria. App. at 127-129.

In some instances, the district court used Third-Party Defendants' naked arguments made in its Reply or Supplemental Memoranda—many of which were either unsupported by a declaration or documents or that relied on flawed support—to discern Stephenson's intent, but rejected Stephenson's direct statements of his intent that were supported by objective criteria. This dichotomy in the district court's treatment of the parties' respective statements of intent led to

24

the court's flawed conclusion on the issue of intent. App. at 124-230.  Compare

App. at 84-89 and App. at 69, 11-116 and 137-144.

## SUMMARY OF THE ARGUMENT

I.      This Court should reverse the district court's finding that Stephenson is

domiciled in Utah because he has physical presence and intent to remain in

Wyoming.

II.     Appellees failed to show that Stephenson changed his domicile to Utah.

III.    Stephenson met his burden of proving his Wyoming domicile.

IV.     The district court misapprehended the facts and the presumptions and

improperly shifted the burdens resulting in its erroneous conclusion that

Stephenson was a citizen of Utah.

## ARGUMENT

**I.      This Court Should Reverse the District Court's Finding that
Stephenson Is Domiciled in Utah Because He Has Physical Presence and
Intent to Remain in Wyoming.**

### A.  Standard of Review

Stephenson appeals the district court's finding that he is not a Wyoming

citizen, which resulted in dismissal of Stephenson's Counterclaims and Third-Party

Claims for alleged lack of diversity jurisdiction. The issue whether diversity

jurisdiction exists is reviewed as a mixed question under the clearly erroneous

standard. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 518 (10th Cir.

1994).

### B. Domicile Is Determined by Physical Presence in a State and Intent to Remain There

The Court has jurisdiction over matters in controversy between "citizens of

different States." 28 U.S.C. § 1332(a)(1). For purposes of diversity jurisdiction, a

person is considered a citizen of the state in which he is domiciled. *Crowley v.*

*Glaze*, 710 F.2d 676, 678 (10th Cir. 1983).

The court considers two factors when determining an individual's domicile:

(1) physical presence in a place and (2) an intent to remain there. *Mississippi Band*

*of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). Domicile and residence

are not necessarily synonymous—without intent to remain, residence is not

domicile; domicile requires physical presence combined with intent to remain. *Id.*

### C. Appellees Failed to Show that Stephenson Changed His Domicile to Utah.

*1. Diversity Jurisdiction is Determined From the Complaint, Where Appellees Alleged That Stephenson Was a Resident of Wyoming*

The court generally determines diversity jurisdiction "from the complaint."

*Bair v. Peck*, 738 F. Supp. 1354, 1356 (D. Kansas 1990) (*citing Whitelock v.*

*Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972)). When "determining diversity

jurisdiction, domicile is assessed as of the date the complaint is filed." *Id.* (*citing Johnston v. Cordell National Bank*, 421 F.2d 1310, 1311 (10th Cir. 1970)).

In this case, the complaint—filed March 31, 2011 by Plaintiffs—alleged that they were Utah residents and that Stephenson "is an individual who resides in the State of Wyoming." *Complaint* dated Mar. 31, 2011, docket no. 2, at 2, App. at 7. Thus, even though Plaintiffs did not assert jurisdiction under 28 U.S.C. §1332, the facts that they pled established diversity jurisdiction.

On January 31, 2012, Stephenson filed Counterclaims and a Third Party Complaint naming Hall, Brent Middleton, Trustee, Brent Middleton, Jamie Sorenson, Mike Medell, National Financial Systems Management, Inc., Thrive National, Thrive National Corporation, Thrive Systems, Inc., Eric Gerdes, George Ulrich, Darwin Nelson, Scott Mee, Ben Staples, and National Financial Systems Management, Inc. Employee Stock Ownership Plan ("Third Party Defendants") as Third Party Defendants. App. at 9. On February 29, 2012, Third Party Defendants filed a Motion to Dismiss for lack of jurisdiction later supported by Plaintiffs. App. at 181. On March 16, 2012 Stephenson filed an Opposition to Third Party Defendants' Motion to Dismiss and alleged diversity jurisdiction in addition to federal question and supplemental jurisdiction. App. at 183. In Reply, Third Party Defendants challenged diversity of the parties in a footnote. *Thrive Reply Memo*, docket no. 77, at fn. 4, App. at 185. As discussed below, Third Party Defendants

27

deviated from Plaintiffs' original assertion that Stephenson was a Wyoming

resident to now claim that Stephenson was a Utah resident.

2. *The Initial Presumption Is that Stephenson's Domicile is Wyoming Because Stephenson Established His Domicile in Wyoming when He Moved there in 2006.*

Once a domicile is established, there is a presumption that it continues

unless and until a new one is acquired. *Mitchell v. U.S.*, 88 U.S. 350, 353 (1874);

*see also Bair*, 738 F. Supp. at 1356 (citing *Lew v. Moss*, 797 F.2d 747, 751 (9th

Cir. 1986)). Courts have also allowed a presumption of continuing residence upon

proof of residency—after a party alleges that a party is a resident of a particular

state, a presumption of continued residency is created, putting the burden of

coming forward with contrary evidence on the party seeking to prove otherwise.

*E.g. Dyer*, 19 F.3d at 519; *see Kelleam v. Maryland Casualty Co. of Baltimore*, 112

F.2d 940, 943 (10th Cir. 1940), rev'd on other grounds, 312 U.S. 377 (1941).

There is also a presumption in favor of an established domicile that must be

overcome by a party seeking to show a change in domicile. *Coury v. Prot*, 85 F.3d

244, 250 (5th Cir. 1996) (citing *Lew v. Moss*, 797 F.2d at 751)). In order to meet

the burden of going forward, the party attempting to show a change must come

forward with enough evidence to withstand a directed verdict. *Lew*, 797 F.2d at

751.

In analyzing the citizenship question, the district court ignored the presumption that should have inured to Stephenson's benefit—that, having established Wyoming residency by at least 2007, the court would presume that his Wyoming residency would continue unless and until a new one is acquired. *See Mitchell*, 88 U.S. at 353. Furthermore, the district court ignored the presumption that should have been held against the Third Party Defendants. Because Plaintiffs originally alleged that Stephenson was a resident of Wyoming, a presumption of continuing residency should have been created, placing the burden on the party seeking to prove otherwise—in this case, Third Party Defendants. *See Dyer*, 19 F.3d at 519.

Stephenson's Wyoming domicile was established in 2007, as noted by the district court, and was still his domicile in 2009—the year Appellees now allege that Stephenson changed his domicile to Utah. The proper presumption that the court should have begun with, therefore, is that Stephenson's Wyoming domicile continued unless and until a new one was acquired. *See Mitchell*, 88 U.S. at 353. Furthermore, as a Wyoming resident since 2006, Stephenson enjoys a presumption of continuing Wyoming residence. *Kramer v. Sears Roebuck and Co.*, 108 F.3d 1388, *3 (10th Cir. 1997) (unpublished).

The district court, by contrast, began its analysis from the erroneous point of assuming that "[t]he parties agree [that in] mid-2009 . . . the [Stephenson] family

moved to Fruit Heights, Utah." *Memorandum Decision and Order Granting Motions to Dismiss* dated 6/14/2012, docket number 96, at 7, App. at 123. Stephenson, however, never moved from Wyoming to Utah—and Stephenson never agreed that he did. App. at 69, 114 and 138. The assumption that the parties agree that Stephenson moved to Utah in 2009 is without support in the record. App. at 124. Compare App. at 84-89 and App. 69, 114 and 138. In reality, the only fact about Stephenson's citizenship that the parties ever agreed on was that Stephenson was a resident of Wyoming beginning at least by 2007 —a point that, as discussed earlier, Plaintiffs alleged in their original complaint. *See Complaint* dated Mar. 31, 2011, docket no. 2, at 2, App. at 7.

Many facts in the record show that Stephenson has continuously lived in Wyoming since 2006. He never moved or intended to move back to Utah, and Stephenson never stipulated to that fact. *E.g. Declaration of J. Hoyt Stephenson* dated July 16, 2012, docket number 104-1, at 3, App. at 137 ("Since I moved to Wyoming in June 2006, I have continuously declared Wyoming as my residence and legal domicile. I have not moved from my home in Wyoming. I intend to remain a resident and citizen of Wyoming and to operate my businesses from Wyoming."). In fact, Stephenson specifically denied moving to Utah. *Stephenson's Declaration in Support of Supplemental Memorandum*, docket number 93-1, at ¶10, App. at 114 ("Hall asserts that I moved my residence back from Evanston,

Wyoming to Fruit Heights, Utah. These statements are false and completely

without any factual support. I have not changed my residence from Evanston,

Wyoming to Fruit Heights, Utah and I continue to be a resident and citizen of the

State of Wyoming."). Therefore, the proper presumption for the district court to

begin with is that Stephenson was and is a Wyoming citizen since at least 2007.

3.  *Appellees Had the Initial Burden of Production that Imposed Substantive, Procedural, and Evidentiary Requirements Upon Appellees*

An individual's citizenship for diversity purposes depends upon his

citizenship or domicile at the time the action is filed. *Freeport-McMoRan Inc. v. K

N Energy, Inc.,* 498 U.S. 426, 428 (1991) (per curiam) (diversity jurisdiction

depends upon the facts at the time the action was commenced); *Smith v.

Cummings,* 445 F.3d 1254, 1260 (10th Cir. 2006). As discussed above, there is a

universal presumption in federal courts that a party has not recently changed his

domicile. *E.g., Desmare v. United States,* 93 U.S. 605, 609 (1877) ("A domicile

once existing continues until another is acquired . . . Where a change of domicile is

alleged, the burden of proof rests upon the party making the allegation."); *McCann

v. Newman Irrevocable Trust,* 458 F.3d 281, 286-87 (3d Cir. 2006) ("This principle

gives rise to a presumption favoring an established domicile over a new one."

(*citing, inter alia,* State *Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 519 (10th

Cir. 1994); *Lew v. Moss,* 797 F.2d 747, 751 (9th Cir. 1986); *Bair v. Peck,* 738 F.

Supp. 1354, 1356 (D. Kan. 1990))).

Statutes conferring federal jurisdiction are to be strictly construed. *Crowley

v. Glaze,* 710 F.2d 676, 678 (10th Cir. 1983); *Wolf Mountain Resorts LC v. ASC

Utah,* 2008 U.S. Dist. LEXIS 55469, *4 (D. Utah, July 21, 2008). Throughout the

proceeding the party asserting federal diversity jurisdiction carries the burden of

persuasion of establishing jurisdictional facts by a preponderance of the evidence.

*McCann*, 458 F.3d at 286; *Bair,* 738 F. Supp. at 1356 ; *see also* Fed. R. Civ. P. 301

("In a civil case, unless a federal statute or these rules provide otherwise, the party

against whom a presumption is directed has the burden of producing evidence to

rebut the presumption. But this rule does not shift the burden of persuasion, which

remains on the party who had it originally.").

But the established-domicile presumption plays a critical, and, here,

dispositive role in resolving Appellees' claim that diversity jurisdiction does not

exist. The established-domicile presumption places upon Appellees, the party

moving to dismiss upon the argument that a recently-changed domicile destroys

diversity, the initial burden of production regarding domicile. A presumption

means that the presumed fact or principle is established in the case unless and until

the party seeking to overturn the presumed fact or principle meets the substantive,

procedural and evidentiary elements needed to rebut the presumption. *See St.*

*Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993).

    a.  Substantive Element

    The substantive element of the established-domicile presumption comes

from these two well-established substantive elements of domicile for diversity

purposes: "Once domicile is established . . . the person may depart without

necessarily changing his domicile. 'To effect a change in domicile, two things are

indispensable: First, residence in a new domicile, and second, the intention to

remain there indefinitely.'" *Smith v. Cummings,* 445 F.3d 1254, 1260 (10th Cir.

2006) (*quoting Crowley v. Glaze,* 710 F. 2d 676, 678 (10th Cir. 1983)). Other

substantive law of domicile can inform the substance of the presumption, such as:

A person can have only one domicile at any time. *E.g., Palazzo v. Corio,* 232 F.3d

38, 42 (2d Cir. 2000). A wife's domicile does not necessarily prove the husband's.

*Wilson v. Pickens,* 444 F. Supp. 53, 55 (W.D. Ok. 1977) ("[R]ecent cases have

held that a wife may acquire a domicile separate from that of her husband.");

*Spindel v. Spindel,* 283 F. Supp. 797 (E.D. N.Y. 1968) ("Whatever the ancient

doctrine, a wife is capable of acquiring a domicile separate from that of her

husband…."). A person's merely being in another place does not demonstrate a

new domicile, for a domicile is "the place to which, whenever he is absent, he has

the intention of returning." *E.g., Martinez v. Bynum,* 461 U.S. 321, 331 (1983).

Though residence is an important element of domicile, a change of residence by itself does not prove a change of domicile because a change of domicile requires the simultaneous occurrence of change of residence and the intent to remain at the new residence. *See, e.g, Crowley*, 710 F. 2d at 678.

      b.  Procedural Element

The procedural element of the established-domicile presumption on a motion to dismiss for lack of diversity based upon an alleged change of domicile is that the party asserting a change of domicile has the "*initial*" burden of production. *Washington v. Hovensa LLC,* 652 F.3d 340, 342 (3d Cir. 2011). This means that the party asserting diversity based upon an established domicile has no burden unless and until the party asserting changed domicile meets its burden of proving both substantive elements of the presumption *See, e.g., Bank One, Texas, N.A. v. Montle,* 964 F. 2d 48, 50 (5th Cir. 1992) (in determining whether there has been a change of domicile on a diversity motion, the party asserting change of domicile must satisfy the initial burden of producing evidence of change of domicile – i.e., change of residence with intent to stay -- before party asserting diversity has the burden of persuasion to prove diversity).

Here, Appellees bear the burden of proving that Stephenson moved his residence from Wyoming to Utah and intended to remain a Utah resident. "*If* the opposing party … is successful [in presenting sufficient evidence to rebut the

presumption], the presumption is defeated, the case proceeds, and the party

asserting [diversity] jurisdiction bears the burden of proving diversity of

citizenship." *Washington v. Hovensa LLC,* 652 F.3d 340, 345 (3d Cir. 2011)

(emphasis added) (*quoting McCann, supra,* 458 F.2d 281 at 287 n.3). If, as here,

however, the party asserting changed domicile fails to meet its burden, the inquiry

ends and the motion to dismiss should have been denied. *See Washington*, 652

F.3d at 345; *McCann,* 458 F.3d at 286; *Bank One,* 964 F.2d at 50.

    c.  Evidentiary Element

    The evidentiary element of the established-domicile presumption is that the

party asserting changed domicile must rebut each element of the presumption (i.e.,

that Stephenson moved his residence from Wyoming to Utah with intent to remain

in Utah) with the requisite quantum of proof. *Id.* The District of Utah, the Second

Circuit, and other courts have held that proof of changed domicile requires "clear

and convincing evidence." *Palazzo v. Corio,* 232 F.3d 38, 42 (2d Cir. 2000); *Wolf*

*Mountain Resorts LC v. ASC Utah,* 2008 U.S. Dist. LEXIS 55469, \*4 (D. Utah,

July 21, 2008); *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol North American,*

*Inc.,* 2012 U.S. Dist. LEXIS 83524, \*3 (W.D. La., June 14, 2012); *Ceglia v.*

*Zuckerberg*, 772 F.Supp.2d 453, 455-456 (W.D.N.Y. 2011); *Liakakos v. Cigna*

*Corp.* 704 F. Supp. 583, 586 (E.D. Pa. 1988).[8]  Appellees have clearly not met this standard.

### 4.  *Appellees Failed to Produce Enough Evidence to Withstand a Directed Verdict Because Insufficient Facts Support Appellees' Allegation that Stephenson Is Domiciled in Utah*

A directed verdict is appropriate when "there are no controverted issues of fact upon which reasonable men could differ." *Martin v. Unit Rig & Equipment Co., Inc.*, 715 F.2d 1434, 1438 (10th Cir. 1983) (*citing* 5A Moore's Federal Practice ¶ 50.02[1], at 50–20 (2d ed. 1982)). In other words, Third Party Defendants must offer enough facts to show that a reasonable finder-of-fact could conclude that Stephenson intended to change his domicile to Utah at some time before this action was filed in 2011.

The only basis for Third Party Defendants' argument that "Stephenson and his family moved back to Utah in mid-2009," *Thrive Reply Memorandum*, docket 85, at 6, App. at 185, are (1) Appellees' inaccurate argument that "Stephenson admits that he resides in Fruit Heights, Utah," *id.*; (2) the deposition testimony that Appellees cited for this argument, which included Stephenson's unequivocal

---

[8]  Other cases, including the Third Circuit's *McCann,* hold that the standard of proof for rebutting the presumption of an established domicile is preponderance or "enough evidence substantiating a change to withstand a motion for summary judgment or judgment as a matter of law on the issue."  *McCann, supra,* 458 F.2d at 288-289.  Nevertheless, Appellees failed to address how and with what evidence satisfied even this standard.

testimony that he resides in Wyoming; and (3) paragraphs 7 and 8 of Third Party

Defendant Hall's declaration that: (a) Hall met Stephenson in the Utah house that

was "fully furnished"; (b) that there were Stephenson family photos hanging on the

wall; and (c) that there were several vehicles at the house, including cars and a dirt

bike.

None of the facts offered by Third Party Defendants constitute evidence

sufficient for a reasonable finder-of-fact to conclude that Stephenson had moved or

changed his domicile to Utah; as a result there is insufficient evidence to withstand

a directed verdict. In other words, Third Party Defendants failed to meet their

burden of production.

The Third Circuit's *Washington* decision highlights the significant

differences between what happened here and what should have happened.

*Washington v. Hovensa LLC,* 652 F.3d 340, 342 (3d Cir. 2011). There, the Third

Circuit criticized the district court's reasoning in finding a lack of diversity based

upon a new domicile because the district court weighed factors without making it

clear that the court had placed the burden of production on the party asserting a

new domicile and without analyzing whether and how the facts satisfied that

burden.  The Third Circuit held that it was reversible error merely, as the court

there (and the Court here) appeared to do, to assess whether the party asserting

diversity (Stephenson) had met its burden of persuasion without first determining

whether the party asserting a changed domicile (Appellees) had met its burden of production to rebut the established-domicile presumption.[9]

The Court erred by holding that Appellees' burden of production had been satisfied by stipulation—as discussed above—and, thus, destroyed the presumption of an established domicile. Whether the correct facts are assessed to determine whether Appellees met their initial burden of production, or that burden is ignored and Stephenson is required to bear the burden of persuasion in the absence of Appellees' burden, the facts before the Court, viewed correctly, show that Stephenson met his burden and Appellees did not.

### D. Stephenson Met His Burden to Establish Diversity Jurisdiction

Appellees, as the parties seeking to show that Stephenson changed his domicile from Wyoming to Utah, bear the burden of going forward on that issue. If

---

[9]   This case shows that the sequential nature of Appellees' burden of production was not just academic but affected Stephenson's fundamental rights. Because Appellees did not meet any burden of production regarding diversity, the Court should have denied the motion to dismiss as it related to the state-law claims precisely because Appellees had satisfied no burden by its moving papers. Had Appellees moved properly regarding diversity – i.e., actually alleging, arguing, and proffering evidence in its moving papers that diversity was lacking, Stephenson could have opposed Appellees' specific proof with more detail. This is illustrated by the fact that Stephenson did so in another pending action in which Appellee-Thrive asserted lack of diversity based upon the claim that Stephenson was a citizen of Utah (citing this Court's decision) that Appellee-Thrive raised in its moving papers and not just in reply. *See Stephenson Declaration* dated Aug. 9, 2012, docket no. 104-1, at ¶¶ 1-25, App. at 136–141; Barker Declaration dated Aug. 9, 2012, docket. no. 104-2, at ¶¶ 1-15,  App. at 147–150.

Appellees meet their burden, the ultimate burden of proving that diversity exists

lies with the party invoking diversity jurisdiction. *Dyer*, 19 F.3d at 518. In this

case, Stephenson met his burden of proving diversity jurisdiction exists because he

has physical presence in Wyoming and intent to remain there and his declarations

and supporting exhibits clearly support his claims of physical presence and intent.

Stephenson moved to Wyoming in 2006 and has continuously lived there

ever since. *Declaration of J. Hoyt Stephenson* dated July 16, 2012, docket number

104-1, at 3,  App. at 137 ("Since I moved to Wyoming in June 2006, I have

continuously declared Wyoming as my residence and legal domicile. I have not

moved from my home in Wyoming. I intend to remain a resident and citizen of

Wyoming and to operate my businesses from Wyoming.").

1. *The District Court Did Not Properly Weigh Statements of Subjective Intent*
   *Supported by Objective Indicia of a Wyoming Domicile*

The District Court did not correctly give weight to Stephenson's statements

of intent. The Supreme Court has noted that "[o]ne's testimony with regard to his

intention is of course to be given full and fair consideration, but is subject to the

infirmity of any self-serving declaration." *District of Columbia v. Murphy*, 314

U.S. 441 (456); *see also Crowley*, 710 F.2d at 678 ("Such statements are of course

self-serving, but such does not mean that they must be discarded by the trier of

facts."). Rather than apply the Supreme Court's standard of looking for

contradictory "declarations and inconsistent acts," the district court declared that it would refuse to "accept any self-serving statements of intent that are unsupported by objective indicia." *Memorandum Decision and Order Granting Motions to Dismiss* dated 6/14/2012, docket number 96, at 10, App. at 126.

Notwithstanding the district court's reluctance to accept Stephenson's allegedly self-serving statements set forth in his declarations, the district court, without hesitation or discussion, readily accepted Third Party Defendant Hall's self-serving and unsupported statements regarding Stephenson's residence and domicile in 2009. This unequal treatment of equally self-serving statements of Stephenson and Hall was improper and indefensible and the district court should have applied the Supreme Court's standard in *District of Columbia v. Murphy* by looking for contradictory "declarations and inconsistent acts," rather than dismiss out of hand Stephenson's statements about his intent to remain domiciled in Wyoming as evidenced by several objective indicia as reflected herein. *See Murphy*, 314 U.S. at 441.

Moreover, even if Stephenson had obtained Wyoming domicile solely to establish diversity jurisdiction—he did not, having moved there several years before this action commenced—such an intention would not invalidate diversity jurisdiction. *E.g. Cressler v. Neuenschwander*, 930 F. Supp. 1458, 1460 (D. Kan. 1996) ("A change of domicile is valid even if done for the purpose of creating

diversity" (citing *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 53 (1st Cir.

1992)); *see also* 1 James W. Moore, Moore's Federal Practice ¶ 0.74[.3–4] (2d ed.

1996).

Stephenson provided overwhelming objective indicia—detailed below—of

his Wyoming domicile, which the district court appears to have misapprehended or

overlooked. The court should have credited Stephenson's statement, given by a

signed declaration, about his intentions because it was supported by objective

indicia. It is proper—arguably even required—for Stephenson to state his

subjective intent regarding his intentions for the future since such intentions are

one of the two key groups of issues when a person's domicile is challenged for

diversity.

Furthermore, in the state case related to this controversy, both in his

September 14, 2010 complaint and his March 21, 2011 Amended Complaint—both

filed before this case's March 31, 2011 complaint—Stephenson alleged that

"Stephenson is and was at all relevant times herein a resident of the State of

Wyoming." App. at 7. Stephenson alleged these facts in a state proceeding where

he was not asserting diversity jurisdiction. Therefore, they are not "self-serving

statements of intent." *But cf. Memorandum Decision and Order Granting Motions

to Dismiss* dated 6/14/2012, App. at 125.

2.  *The Objective Evidence Demonstrates that Stephenson Had Not Abandoned His Wyoming Domicile and Had Not Established a Utah Residence*

Stephenson is entitled to the presumption maintaining his Wyoming domicile unless and until another one is proved. *Mitchell*, 88 U.S. at 353. The district court, however, ignored this presumption—in part because of its erroneous initial assumption that the parties agreed that Stephenson had moved to Utah in 2009. This assumption, however, had no basis in the record. Without that erroneous assumption, there are not sufficient facts in the record to indicate that Stephenson moved to Utah. Furthermore, there are not sufficient facts to meet the two required factors to demonstrate a change of domicile: presence and intent.

The district court's erroneous assumption that Stephenson had moved to Utah in 2009 also led it to employ an incorrect "multiple residence" analysis as the foundation of its consideration of Stephenson's domicile. In cases where the plaintiff changes residence recently before filing suit, the same two factors determine domicile: residence and intent. *Bair*, 738 F. Supp. at 1356  (citing *Crowley*, 710 F.2d at 678). To assist in such "multiple-residency" cases, the Supreme Court has set forth several factors to use in a "totality of the circumstances approach" to assist courts in determining domicile, including:

(1) Whether or not an individual votes where he claims domicile;

42

(2) The manner in which an individual lives, taken in connection with his station in life, i.e., whether he rents or buys a home;

(3) Whether his family and dependents have moved to the new residence;

(4) Whether an individual's belongings have been moved to the new residence;

(5) One's relationships with churches, clubs, and investments in the new residence;

(6) Whether or not a place of abode is retained in the old state of residence;

(7) Whether or not investments in local property or enterprise attach one to the former residence;

(8) Whether one retains affiliations with professional, religious and fraternal life of the former community; and

(9) What domicile is claimed for tax purposes.

*Computer People, Inc. v. Computer Dimensions Int'l, Inc.*, 638 F. Supp. 1293,

1295 (M.D. La. 1986) (citing *Murphy*, 314 U.S. at 455). Courts have also

considered:

(10) The state where one registers his automobile; and

(11) Where one obtains a driver's license.

*Computer People*, 638 F. Supp. at 1295 (citing *United States v. Scott*, 472 F. Supp.

1073 (D.C. Ill. 1979)).

Combined with its misapprehension—discussed later—of the presumptions

that apply in this case—namely, that Stephenson was domiciled in Wyoming until

proven otherwise—as well as its improper consideration—discussed above—of

Stephenson's own statements, the district court came to the wrong conclusion

regarding Stephenson's domicile. Assuming *arguendo* that the "multiple-residence" analysis applies, a proper consideration of each of the factors still shows that Stephenson is domiciled in Wyoming, and never intended to change that domicile to Utah. Each factor is addressed in turn.

1.  Stephenson Votes in Wyoming.

The first factor examines "whether or not an individual votes where he claims domicile." *Computer People*, 638 F. Supp. at 1295. "Whether or not one votes where he claims domicile is highly relevant." *Murphy*, 314 U.S. at 456. Therefore the court pays particular attention to this factor. *E.g. Stucky By & Through Stucky v. Bates*, 2 F. Supp. 2d 1434, 1437 (D. Kan. 1998) ("The court finds particularly persuasive that [Plaintiffs] registered to vote in Missouri . . .").

The district court acknowledged that "Stephenson avers that he is registered to vote in Wyoming and does not vote in Utah." *Memorandum Decision and Order Granting Motions to Dismiss* dated 6/14/2012, docket number 96, at 11, App. at 127. Dividing voter registration and voting practice into separate inquiries, the district court acknowledged that Stephenson has maintained his Wyoming voter registration since 2006, but ignored evidence that Stephenson does actually vote in Wyoming. *E.g. Stephenson Declaration re Memorandum in Opposition to Thrive's Motion to Dismiss*, docket number 80-1, ¶¶ 10, 13, App. at 69 ("The following statements relate to facts that exist today and that existed as of March 31, 2011, the

date this action was filed . . . I am registered to vote in Wyoming and I vote in Wyoming. I do not vote in Utah."); *see also Declaration of J. Hoyt Stephenson* dated July 16, 2012, docket number 104-1, ¶15, App. at 139-140 ("I have voted in Wyoming in the federal, state and local elections that have occurred after 2006, including most recently in 2010. I plan to vote in Wyoming the presidential election of 2012 as a Wyoming resident. I am not registered to vote in Utah. I have not voted in Utah since I moved to Wyoming in 2006."). Because Stephenson has registered to vote and actually voted in Wyoming since he moved there in 2006, the court should have found that this "highly relevant" factor weighs in favor of Stephenson's Wyoming domicile.

2. Stephenson Owns a Home, Ranch, Property, and Business in Wyoming, But Does Not Own a Residence in Utah.

The second factor examines "the manner in which an individual lives, taken in connection with his station in life, i.e., whether he rents or buys a home." *Computer People*, 638 F. Supp. at 1295. Stephenson owns a home with "a permanent business office" in Wyoming. *Declaration of J. Hoyt Stephenson* dated July 16, 2012, docket number 104-1, at ¶7, App. at 137-138. He also is the sole member of a Wyoming LLC that owns a ranch consisting of 148 acres of fee land and 230 acres of leased land, as well as a 50% interest in 640 acres of mountain land near the ranch. *Id.* at ¶¶ 9–10.

45

Stephenson is "physically in Wyoming every week." *Id.* at ¶25, App. at 141-142. He lives at his Wyoming home, and has spent more time in Wyoming than Utah since moving to Wyoming in 2006. *Id.* Stephenson was actively involved in preparing for and purchasing the ranch in 2009–10 and has played an active role in managing and operating the ranch since then. *Id.* at ¶¶ 11–14, App. at 138-139.

By contrast, Stephenson does not own a residence in Utah. Appellees make much of the fact that Stephenson is a co-trustee of the Utah house— but Stephenson is not a beneficiary of that trust, nor does he own any beneficial interest in the corpus or assets of the trust, and he claims no ownership in the residence. *Id.* at ¶19, App. at 140-141. Furthermore, Stephenson's business office in Layton, Utah was first established in 2000 and continued in a different form in July 2009 pursuant to the provisions of the 2009 Purchase Agreement. *Id.* at ¶26, App. at 141-142.

Thus the court ought to find that Stephenson's "manner of living" in Wyoming—owning a home and working on a ranch there—while he owns no residence in Utah and only had a business office in Utah after July 2, 2009 by virtue of the 2009 Purchase Agreement, does not show that Stephenson intended to change domicile from Wyoming to Utah in 2009 or at any time since then. Even if the Court gives weight to Stephenson's role as trustee of the Utah residence, that

merely shows that Stephenson has access to a Utah residence in addition to the

Wyoming home he owns. Stephenson's son owns a home in Georgia where

Stephenson stays when he regularly visits—but that fact does not affect

Stephenson's Wyoming domicile. Nor should the fact that he regularly visits Utah.

Showing that Stephenson has access to a Utah home would not conclusively show

that Stephenson intended to change domicile from Wyoming to Utah; therefore the

presumption of the existing Wyoming domicile prevails.

3. <u>Stephenson's Family and Dependents Split Their Time Between
   Wyoming and Utah.</u>

The third factor examines "[w]hether his family and dependents have moved

to the new residence." *Computer People*, 638 F. Supp. at 1295. Happily married

spouses may acquire domiciles separate from each other. *See Mas v. Perry*, 489

F.2d 1396 (Fifth Cir. 1974).

In 2009, Stephenson's wife and two minor children began spending more

time at her Utah home, but she and Stephenson's six children have continued to

"spend a great deal of time" in Wyoming. *Declaration of J. Hoyt Stephenson* dated

July 16, 2012, docket number 104-1, at ¶23, App. at 140–141. Stephenson's family

continues "to attend church and community activities in Wyoming on a regular

basis." *Id.* For example, his "two minor children attended a Trek Activity in

Wyoming with the youth of the local [church] congregation in Wyoming in July

2012," and in the summer of 2011 Stephenson "helped organize and carry out a multi-day river trip with the youth of" the Wyoming congregation." *Id.* at ¶¶23, 28, App. at 140–142.

Stephenson's minor children also are actively and continuously involved in the operations of the ranch—besides one employee and his children, Stephenson and his children are the only people that work the ranch. *Id.* at ¶14, App. at 137-140 and 148-149. One of Stephenson's other sons attended Utah State University on an out-of-state scholarship from Wyoming beginning in 2009, then in 2010 departed to serve a church mission to Mexico from the Wyoming congregation, and reported his mission in Wyoming when he returned in 2012. *Id.* at ¶24, App. at 138–139.

Thus this factor is inconclusive at best; Stephenson's wife and minor children began spending more time in Utah in 2009, but continued to work the ranch, spend time at Stephenson's home, and attend church and community activities in Wyoming. One of his dependent non-minor sons maintained his Wyoming residency when he went to school and then on a church mission. Stephenson's wife's domicile is not at issue here—but even if she were domiciled in Utah, the Stephensons would simply be another example of a happily married couple with domiciles separate from each other. *See Mas*, 489 F.2d at 1396. Thus this factor does not conclusively show that Stephenson intended to change

48

domicile from Wyoming to Utah; therefore the presumption of the existing

Wyoming domicile prevails.

    4.  <u>Stephenson's Personal Belongings Are In Wyoming</u>.

The fourth factor examines "[w]hether an individual's belongings have been

moved to the new residence." *Computer People*, 638 F. Supp. at 1295.

In this case, the allegedly new residence is in Utah. But this factor weighs in

favor of Wyoming domicile, because Stephenson has never moved his personal

belongings away from Wyoming. *Declaration of J. Hoyt Stephenson* dated July 16,

2012, docket number 104-1, at ¶5, App. at 137-138. He has family photos on the

walls and family memorabilia in his Wyoming home. *Id.* He manages his business

and maintains his permanent records and legal documents in Wyoming. *Id.* at ¶7.

He receives all personal bank and credit-card statements in Wyoming. *Id.* at ¶8.

Appellees' only relevant allegation supporting this factor is that the Utah

residence has Stephenson family photos on the wall which would be expected in a

home owned by a trust of which Stephenson's wife is the sole beneficiary. But at

best such an allegation could only show that Stephenson has two residences. *See*

*Cressler v. Neuenschwander*, 930 F. Supp. 1458, 1461 (D. Kan. 1996) (finding

diversity jurisdiction). Note that an individual may have multiple residences while

being domiciled in only one state. *E.g. Dyer v. Robinson*, 853 F. Supp. 169, 172

(D.Md. 1994). Appellees have presented no other allegations that Stephenson had any other personal belongings—clothing, food in the refrigerator, etc.—in Utah. *See Cressler*, 930 F. Supp. at 1461.

At best this factor could merely show that Stephenson maintains more than one residence. Because the weight of the evidence indicates that Stephenson maintains his belongings in the home where he primarily spends his time—in Wyoming—this factor does not support a showing of intent for Stephenson to change domicile to Utah, but instead weighs in favor of Stephenson's Wyoming domicile.

5. <u>Stephenson's Relationship With Churches, Clubs, and Investments in Utah</u>.

The fifth factor examines "[o]ne's relationships with churches, clubs, and investments in the new residence." *Computer People*, 638 F. Supp. at 1295. Stephenson's family attends church and church activities in both Utah and Wyoming. *Stephenson's Supplemental Memorandum* dated May 23, 2012, docket number 93-1, at ¶10, App. at 114-115. Stephenson's provision of serve and participation in Utah church activities does not conclusively show that he intended to abandon his Wyoming domicile. As an active church-goer, the fact that Stephenson attends church wherever he is physically present on a particular Sunday merely affirms the fact that Stephenson is an active church-goer.

Stephenson's presumable Georgia church attendance during his twice-monthly visits there to conduct business and visit his two adult children, *Stephenson Declaration* dated July 16, 2012*, at ¶27, App. at 141-142, would not destroy his Wyoming domicile; his Utah church activity ought not either. This factor is "certainly not conclusive on the issue of . . . domicile." *Cressler*, 930 F. Supp. at 1461.

6. Stephenson Maintains His Home, Business, Property, and Ranch in Wyoming.

The sixth factor examines "[w]hether or not a place of abode is retained in the old state of residence." *Computer People*, 638 F. Supp. at 1295. As discussed above, Stephenson maintains his home, office, and ranch in Wyoming. *Stephenson Declaration* dated July 16, 2012, docket number 104-1, at ¶7, 9–10, App. at 137-138. This factor therefore does not support a finding of intent for Stephenson to change his domicile to Utah, but instead is evidence of his presence and intent to remain domiciled in Wyoming.

7. Stephenson's Investments in Property and Enterprise Attach Him to Wyoming.

The seventh factor examines "[w]hether or not investments in local property or enterprise attach one to the former residence." *Computer People*, 638 F. Supp. at 1295. As discussed above, Stephenson owns a home, business, and ranch in

Wyoming. *Stephenson Declaration* dated July 16, 2012, at ¶¶7, 9–10, App. at 137-138. He is actively involved in the daily operations of the ranch. *Id.* at ¶¶11–14, App. at 138-139. These investments in property and enterprise attach Stephenson to Wyoming, therefore weighing against a finding of intent to change domicile to Utah.  Further, Stephenson's continued retention of investments in property and enterprise in Utah that existed before he moved to Wyoming in June 2006 cannot now be used as evidence to support Third Party Defendants' argument that Stephenson intended to change his domicile from Wyoming to Utah in 2009.

8.  Stephenson Retains Affiliations With Professional, Religious, and
    Fraternal Life in Wyoming.

The eighth factor examines "[w]hether one retains affiliations with professional, religious and fraternal life of the former community." *Computer People*, 638 F. Supp. at 1295. As discussed above, Stephenson has continued to play an active role in his community and church life in Wyoming. *Stephenson Declaration* dated July 16, 2012, at ¶¶23, 28, App. at 140-142. He and his family have continued to participate actively in their Wyoming church congregation. *Id.* Such activity does not support an intent to abandon Wyoming domicile, but instead supports Stephenson's desire to maintain his Wyoming domicile.

9.  Stephenson Claims Wyoming Domicile For Tax Purposes.

The ninth factor examines "[w]hat domicile is claimed for tax purposes." *Computer People*, 638 F. Supp. at 1295.

The lower court correctly found that "Stephenson claims Wyoming as his domicile for federal and state tax purposes. This factor therefore supports a finding of domicile in Wyoming." *Order* dated June 14, 2012, docket number 96, at 12, App. at 128. The facts support the court's conclusion; Stephenson has been a resident of Wyoming for tax purposes since 2007. *Stephenson Declaration* dated July 16, 2012, ¶17, App. at 139 ("Since 2006, my legal domicile for tax purposes has been Wyoming. Beginning in 2007, my federal tax returns have listed my residence as Wyoming. My state tax returns beginning in 2007 list my residence as Wyoming.").

10. Stephenson Registers His Automobiles In Wyoming.

An additional factor considered by courts in determining domicile is "[t]he state where one registers his automobile." *Computer People*, 638 F. Supp. at 1295. All of the automobiles that Stephenson personally owns and uses are registered and titled in his name in Wyoming. *Stephenson Declaration* dated July 16, 2012, ¶18, App. at 139. Those registration documents show Wyoming as Stephenson's residence. *Id.*

11. Stephenson Maintains a Wyoming Driver's License.

An additional factor considered by courts in determining domicile is "[w]here one obtains a driver's license." *Computer People*, 638 F. Supp. at 1295. "[E]vidence about [a party] having a [state] driver's license is relevant in determining [that party's] domicile for diversity purposes." *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

The lower court correctly found "that Stephenson's decision to refrain from obtaining a Utah driver's license is indicative of an intent to return[10] to Wyoming." *Order* dated June 14, 2012, docket number 96, at 11, App. at 127. Stephenson has had a Wyoming driver's license since 2008 and he has not renewed his Utah driver's license since it expired in 2008. *See Stephenson Declaration* dated July 16, 2012, ¶16, App. at 139 ("I have a valid driver's license issued by the State of Wyoming. I obtained my Wyoming driver's license after I moved to Wyoming in 2006 and I have continuously maintained a Wyoming driver's license since that date. I do not have a driver's license issued by the State of Utah. I did not renew

---

[10] Note that the district court's language here—"return to Wyoming"—evidences its erroneous analytical starting point for its evaluation of Stephenson's domicile—the unsupported assumption that the parties agreed that Stephenson had ever left Wyoming.

my Utah driver's license after I moved to Wyoming in 2006."). Thus this factor weighs in favor of Wyoming domicile.

### E. *The District Court Misapprehended the Presumptions, Resulting in its Erroneous Conclusion That Stephenson is a Utah Citizen.*

The district court applied the wrong legal standard to reach its conclusion that Stephenson is a Utah citizen—as a result it found that diversity jurisdiction does not exist. The court stated that "Stephenson carries the burden of proof by a preponderance of the evidence. Proof of a state of equipoise between Wyoming and Utah will not suffice—rather, Stephenson must show it is *more likely than not* that he did not intend, at the time of filing, to remain in Utah indefinitely." *Order* dated June 14, 2012, docket number 96, at 13, App. at 129. But such an approach is backwards from that found in case law—it ignores the presumptions favoring an established domicile over a new one, instead presuming domicile in whatever state destroys complete diversity—in this case, Utah.

The correct approach, as the Supreme Court has established, is to presume that the party's established domicile continues until the new one has been proved. *Mitchell*, 88 U.S. at 353. In this case, where the district court found sufficient facts on both sides to admit that this is at minimum "a close issue," *semper praesumitur pro negante* mandates that Stephenson's existing domicile—Wyoming—ought to have prevailed.

55

Instead, the district court reasoned that because federal courts have limited jurisdiction, "there is a presumption against this Court exercising jurisdiction." *Order* dated June 14, 2012, docket number 96, at 13, App. at 129-130 (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (explaining that the court does not allow parties to stipulate to jurisdiction)). While it is true that federal courts do have limited jurisdiction, the principle cited by the district court is meant to "confine [federal courts'] jurisdiction to the precise limits defined by statute." *City of Lawton, Okl. v. Chapman*, 257 F.2d 601, 603 (10th Cir. 1958). But the effect of the district court's approach is to *shrink*—not confine—the federal court's jurisdiction by ignoring the presumption of continuing domicile when that presumption results in diversity jurisdiction. In other words, the district court effectively applied a presumption against diversity jurisdiction, instead of a presumption against establishment of a new domicile. Again, such an approach has no support in case law, and therefore was clear error.

## CONCLUSION

For the foregoing reasons, the judgment below should be reversed. This Court should hold that Stephenson's domicile at the time of filing was Wyoming, diversity jurisdiction therefore exists on Stephenson's state-law claims, and remand to the district court for adjudication of those claims.

## ORAL ARGUMENT

Stephenson requests oral argument because he believes it will help the Court to make better sense of the factual complexities underlying this appeal. Stephenson also believes that oral argument will help the Court to better understand the relationship between this appeal and the related appeal before the Court which is National Fitness Holdings, Inc. vs. Grand View Corporate Centre, LLC, Appeal No. 12-4215.  Finally, Stephenson believes oral argument will benefit the Court by helping the Court better understand the timelines and timing issues that are relevant to both this appeal and the related appeal.

DATE:  August 12, 2013.


ISOM LAW FIRM PLLC

299 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 209 7400

By:  /s/David K. Isom

David K. Isom (Utah 4773)

Attorney for Defendant-Appellant
J. Hoyt Stephenson

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it is proportionally spaced and contains 13,332 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).  I relied on my word processor to obtain the count and it is Word for Windows.  I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

DATE:  August 12, 2013.


ISOM LAW FIRM PLLC

299 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 209 7400

By:  /s/David K. Isom

David K. Isom (Utah 4773)

Attorney for Defendant-Appellant
J. Hoyt Stephenson

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that all required privacy redactions have been made, and, with the exception of those redactions, every document submitted in digital form or scanned PDF format is an exact copy of the written document filed with the Clerk.

I also certify that this digital submission has been scanned for viruses with the most recent version of the Microsoft Security Essentials virus-scanning program. I further certify that, according to the commercial virus-scanning program, this digital submission is free of viruses.

DATE:  August 12, 2013.

ISOM LAW FIRM PLLC

299 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 209 7400

By:  /s/David K. Isom

David K. Isom (Utah 4773)

Attorney for Defendant-Appellant
J. Hoyt Stephenson

## CERTIFICATE OF SERVICE

I hereby certify that as to the **CORRECTED OPENING BRIEF OF APPELLANT J. HOYT STEPHENSON** and **APPENDIX** on August 12, 2013 an exact copy of the written document filed with the Clerk's Office was furnished through ECF electronic service and by email to the following:

> Richard M. Hymas
> DURHAM JONES & PINEGAR
> 111 East Broadway, Suite 900
> Salt Lake City, Utah 84111
> rhymas@djplaw.com

> Steven Tycksen
> TYCKSEN & SHATTUCK, LLC
> 12401 South 450 East, Suite E-1
> Draper, Utah 84020
> steve@tyshlaw.com

And that on August 12, 2013 seven printed copies of the **ERRATA SHEET** to the **BRIEF OF APPELLANT J. HOYT STEPHENSON** were prepared and sent by FedEx prepaid and properly addressed to:

> Elisabeth A. Shumaker
> Clerk of the Court
> United States Court of Appeals for the Tenth Circuit
> Byrom White United States Courthouse
> 1823 Stout Street
> Denver, Colorado 80257

*s/ David K. Isom*

_____

David K. Isom

## MEMORANDUM DECISIONS AND ORDERS FROM TRIAL COURT
### PURSUANT TO TENTH CIR. RUL. 28.2(A)

**Attachment 1**- Memorandum Decision and Order Granting Defendant's Motion for Partial Summary Judgment December 8, 2011.

**Attachment 2** – Memorandum Decision and Order Requiring Supplemental Briefing May 10, 2012.

**Attachment 3** – Memorandum Decision and Order Granting Motions to Dismiss June 14, 2012.

**Attachment 4** – Judgment In A Civil Case June 18, 2012.

**Attachment 5** – Memorandum Decision and Order Denying Motion For Reconsideration September 28, 2012.

Appellate Case: 12-4183    Document: 01019107826    Date Filed: 08/12/2013    Page: 62

IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

|  |  |
|---|---|
| BRENT MIDDLETON as Trustee of the National Financial Systems Management, Inc. Employee Stock Ownership Plan, et al., <br><br> Plaintiffs, <br><br><br><br> vs. <br><br> J. HOYT STEPHENSON, <br> Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br><br><br> Case No. 2:11-CV-313 TS |

This matter is before the Court on Defendant's Motion for Partial Summary Judgment.

Defendant asks the Court to grant summary judgment on two of Plaintiffs' claims against him.

The Court will grant the Motion as to both claims for the reasons set forth below.

I.  BACKGROUND

In 2003, Defendant J. Hoyt Stephenson incorporated National Financial Systems

Management, Inc. ("NFSM").  As part of the incorporation, the board of NFSM created an

employee stock ownership plan ("ESOP"), and put all of NFSM's stock into the plan, creating

the NFSM ESOP ("the Plan").  Stephenson was designated as a Plan trustee.  NFSM's revenue

1

came in the form of "management fees" paid to NFSM by two companies also owned by

Stephenson—National Financial Systems, Inc. ("NFS") and Metronomics, Inc. ("Metro").

Ninety percent of NFS and Metro's profits were paid to NFSM.

   On October 15, 2007,  NFSM purchased NFS.  NFSM made an up front payment for a

percentage of the purchase price and issued a promissory note for the balance.  On January 15,

2008, NFSM bought Metro in the same manner.

On June 27, 2009, Stephenson entered into "default agreements" with NFSM, in which

NFSM acknowledged it was in default on both the NFS and Metro notes.  NFSM then transferred

all NFS and Metro stock back to Stephenson.  Stephenson did not refund any payments from

NFSM for NFS and Metro.  Stephenson subsequently sold NFS and Metro to another person.

Plaintiffs bring claims under ERISA, claiming that Stephenson violated his fiduciary

duties as trustee of the ESOP by engaging in prohibited transactions with Plan assets when he

bought NFS and Metro as the head of NFSM, and when he entered into default agreements

returning NFS and Metro to himself.  Plaintiffs further allege violations of the United States Tax

Code, for the same reasons.  Stephenson argues that these transactions were not subject to ERISA

fiduciary duties nor prohibited by the United States Tax Code.

## II.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine

issue of material fact and it is entitled to judgment as a matter of law.[1]  The party seeking

summary judgment bears the initial burden of demonstrating an absence of a genuine issue of

---

[1]*See* Fed.R.Civ.P. 56(a).

material fact.[2]  "Once the moving party has properly supported its motion for summary judgment,

the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts

showing that there is a genuine issue for trial."[3]  "An issue is genuine 'if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party.'"[4]

### III. DISCUSSION

Defendant moves for summary judgment on Plaintiffs' second and fifth causes of action.

Plaintiffs' second cause of action alleges violations of ERISA's prohibited transactions and self

dealing provisions.  Plaintiffs' fifth cause of action alleges that the transactions in question were

prohibited under the United States Tax Code.  Both parties agree that all arguments relating to

the second cause of action apply without alteration to the fifth.  Thus, each of Plaintiffs' ERISA

claims will be discussed in turn, and all analysis will be equally applicable to Plaintiffs' tax code

claims.

### A.      PROHIBITED TRANSACTIONS

Plaintiffs first argue that Stephenson has violated 29 U.S.C. § 1106(1)(a).  That statute

governs the behavior of fiduciaries of plans like the ESOP in this case.  The disputed provision

prohibits a fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should

know that such transaction constitutes a direct or indirect sale or exchange, or leasing, of any

property between the plan and a party in interest."  Three transactions may fall under the statute:

---

[2]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3]*Sally Beauty Co., Inc., v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

[4]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

3

(1) the sale of NFS by Stephenson to NFSM; (2) the sale of Metro by Stephenson to NFSM; and

(3) NFSM's default agreement, which returned NFS and Metro back to Stephenson.

Plaintiffs' claims against Stephenson rest on the assumption that, because NFSM was

wholly owned by the ESOP, transacting with NFSM is the same as transacting with the Plan.

ERISA's definition of a plan does not directly address whether entities within the plan constitute

the plan itself: "any plan, fund, or program which . . . is established or maintained by an

employer . . . to the extent that . . . such plan, fund, or program provides retirement income to

employees."[5]  Nor does there seem to be any case that addresses the precise question.[6]  A close

inspection of the language of § 1106 indicates that the disputed transaction here is not a

transaction between the Plan and a party in interest.

---

[5]29 U.S.C. § 1002(2)(A) (2008).  A Department of Labor regulation interpreting ERISA provides guidance on what constitutes the assets of a plan, a question that becomes important further on in this Order.  29 C.F.R. § 2510.3-101.  The regulation makes clear that the investments of a plan are considered assets of the plan. *Id.*  Thus NFSM stock, being an investment of the NFSM ESOP, is an asset of the NFSM ESOP.  However, the regulation does not actually speak to whether dealing with the company, whose stock is held by the plan, is the same as dealing with the plan.

[6]Stephenson does cite to one unpublished Ninth Circuit case, *Andrade v. Parsons*, 1992 WL 182218 (9th Cir. July 31, 1992), which Stephenson claims answers the question.  The case does involve an ESOP and a wholly owned company, and the court does conclude that a purchase by the company of stocks from purported parties in interest to the ESOP is permissible. *Id.* at *3.  However, the court's reasoning is  sparse and somewhat confusing.  The court holds that "the type of stock transaction was not a prohibited one, as the [purchased shares] were never assets (or property) of the plan." *Id.*  But this seems to avoid the question, which is whether the wholly-owned company would be considered a plan in the transaction.  Even though the purchased stock was not a plan asset when purchased, if the wholly-owned company could be considered a plan, then anything the wholly owned company exchanged for the stock would be a plan asset.  In light of this confusion, the Court finds this case unhelpful.

4

A sale or exchange is commonly understood to encompass the transfer of something owned by one party in return for something of value owned by the other.[7]  Here, those parties would be the Plan and Stephenson.  It follows that a sale or exchange between a plan and a party in interest would involve an exchange of some form of *plan property*.

A Department of Labor regulation interpreting ERISA—29 C.F.R. § 2510.3-101(a)(2)—provides guidance on what constitutes the assets of a plan.[8]  The regulation states that the assets of an entity in which an ESOP invests are not plan assets if the entity is an operating company.  An operating company is defined as "an entity that is primarily engaged, directly or through a majority owned subsidiary or subsidiaries, in the production or sale of a product or service other than the investment of capital."[9]

Plaintiffs argue that NFSM is not an operating company because its primary purpose is the investment of capital.  This argument is based on Plaintiffs' theory that NFSM did not actually manage NFS and Metro—rather, NFS and Metro's profits were simply routed to NFSM because of its favorable tax status.  Because NFSM then took that money and "invested" it in NFS and Metro stock, Plaintiffs argue that NFSM's primary purpose was in fact to invest capital

---

[7]The Merriam-Webster Dictionary defines sale as "transfer of ownership of property from one person in return for money."  Home & Office Ed. at 462 (1998).  "Exchange" is "the giving or taking of one thing in return for another."  *Id.* at 180.

[8]Another provision of the same regulation, § 2510.3-101(h)(3), also speaks to the issue of whether the assets of a wholly owned entity belong to the plan.  Both parties agree that under this regulation NFSM's assets would not be considered Plan assets.  Plaintiffs claim, however, that § 101(h)(3) is not the only provision under which NFSM's assets could be deemed plan assets, and thus turn their attention to 101(a)(2).

[9] 29 C.F.R. § 2510.3-101(c).

for NFS and Metro, and, by extension, Stephenson.  In his reply brief, Stephenson describes the

structure of NFSM and the responsibilities of its employees:

> NFSM was established to provide management, administrative and employee
> leasing service for NFS and Metro.  At the time stated, NFSM had over 120
> employees, while NFS and Metro had no employees.  NFSM had a contractual
> duty to provide, and did provide, general accounting, bookkeeping . . . and
> business services to enable NFS and Metro to meet their obligation to their
> customers.  NFS and Metro held contracts with health club customers that
> obligated them to provide accounts receivable management and club management
> software services tailored to the health and fitness club industry.  Together, NFS
> and Metro serviced over 600 locations with over 500,000 members. Virtually the
> only income NFSM received was income from NFS and Metro paid under the
> NFS and Metro Management Agreements for the services summarized above.[10]

Though this detail was provided for the first time in Stephenson's reply brief, the Court notes

that Plaintiffs offered no evidence demonstrating that NFSM was not so structured.  Plaintiffs

thoroughly investigate NFSM's tax returns in pursuit of their "favorable tax status" theory, but

do not comment on the fact that NFSM employed 120 people, much less offer facts showing that

these employees invested capital as their primary responsibility.  In light of Stephenson's

statement about what the employees of NFSM did, and the evidence supporting it, the Court

assumes that Plaintiffs offered no contrary evidence because there was none to offer.

Accordingly, the Court finds that NFSM, with its many employees, provided management

services and was not primarily in the business of investing capital.  This finding necessitates a

finding that NFSM was an operating company.

Because NFSM is an operating company, the Plan's property is limited to NFSM stock.

Furthermore, because no NFSM stock was sold or exchanged in the disputed transactions, the

---

[10]Docket No. 25, at 4.

transactions cannot have been between the Plan and a party in interest.  Accordingly, the Court

finds that NFSM's dealings with Stephenson as owner of NFS and Metro were not transactions

between the Plan and a party in interest, and thus were not subject to the prohibited transaction

provisions of 1106(a)(1).

   Plaintiffs rely heavily on *Marshall v. Snyder*[11] to upend this analysis.  According to

Plaintiffs, *Marshall* held that RPI, a company wholly owned by an ERISA plan, could not spend

its money without complying with ERISA fiduciary requirements—implying that RPI's money

was plan property.  Strictly speaking, this is a correct characterization.  But the court's holding

did not actually turn on whether RPI was owned by the plan.  In *Marshall*, RPI administered the

plan,[12] was funded with payments from the plan, and, it turned out, was using those funds to pay

people who were not actually doing work for the plan.[13]  The court's holding was not that RPI

was subject to fiduciary duties because it was wholly owned by the ESOP.  Rather, RPI was

subject to fiduciary duties because it administered the plan.  In contrast, NFSM is not an

administrator for the Plan, and was not using funds paid to it by the Plan for administrative

services to pay for other things.  Thus, *Marshall*'s holding that RPI could not spend its money

without complying with ERISA fiduciary duties has no application to the instant case.

   Plaintiffs' statutory interpretation argument to the contrary is also unavailing.  The

relevant provision of ERISA prohibits a fiduciary from engaging in a transaction that "constitutes

---

[11]430 F. Supp. 1224 (E.D.N.Y. 1977).

[12]*Id.* at 1228.

[13]*Id.* at 1229.

a *direct or indirect* . . . sale or exchange, or leasing, of any property between the plan and the party in interest."  Plaintiffs, citing the well accepted principle that a statute must be read so as to give each word effect, argue that if the statute doesn't prohibit the transaction at issue then the word "indirect" is redundant.  In other words, Plaintiffs ask the Court to read the relevant provision to prohibit both exchanges/sales of property between the plan and a party in interest (direct sales) and exchanges/sales between parties in interest and things owned by the plan (indirect sales).  But an inspection of the statutory language demonstrates that "indirect" need not encompass the situation here in order to have a separate meaning from "direct."  Both "direct" and "indirect" modify the verbs that follow—"sale," "exchange," and "leasing"—which, in turn, define transactions that take place between the plan and a party in interest.  Read with this relationship in mind, the language would prohibit both (1) a sale that was directly to a party in interest from the plan and (2) a sale by the administrator of plan assets to a third party, which third party then gives the same assets to a party in interest (as long as the administrator knew or should have known the property was headed to a third party).  Reading the statute this way, it is not necessary to make "indirect" applicable to the present situation—one where a plan is "indirectly" involved in a prohibited transaction because a company it owns is buying something from a purported party in interest—in order to save "indirect" from redundancy.

On this understanding of the statute, the exchanged property would have to reach the party in interest or the plan, either directly or indirectly, to be a prohibited transaction.  The present transaction is clearly not covered.  NFSM has entered into direct transactions with Stephenson as owner of NFS and Metro, and the transaction stopped there.  Money and a

promissory note were given to Stephenson, NFS and Metro stock was given to NFSM.  But NFS and Metro were never subsequently delivered or sold to the Plan.  Nor did the Plan give NFSM the money it used to purchase the companies from Stephenson.  Accordingly, there has never been a transaction between the plan and the party in interest, either direct or indirect.

In addition to these arguments, it is well accepted that "the ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer.  ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets."[14]  This is true even if the actions taken by the employer negatively affect the value of ESOP assets.[15]  Thus, as a separate ground for denying Plaintiffs' prohibited transaction claim, it appears that if Stephenson was not acting in his role as plan trustee when he participated in the decision to buy or relinquish NFS and Metro, he was not required to comply with fiduciary responsibilities.

NFSM voted, through its board, to purchase NFS and Metro and to relinquish them.  The purchase was not undertaken or paid for by the Plan.  Though the parties dispute to what extent Stephenson participated in the decision, even if the Court were to assume that Stephenson was fully involved, the outcome would remain the same.  The decision was made for NFSM as a business and not the for the ESOP, with NFSM capital by NFSM board members acting in their

---

[14]*Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir. 1986).

[15]*Phillips v. Amoco Oil Co.*, 614 F. Supp. 694, 717 (D. Ala. 1985) ("[T]he fiduciary duty provisions of ERISA are not implicated in the sale of a business or a portion of a business merely because the terms of the sale will affect the terms and conditions of contingent future benefits.").

NFSM capacities. Thus, the Court finds that, to whatever extent he was involved in the decisions, Stephenson was not subject to fiduciary responsibilities when making them.

In light of the foregoing, the Court holds that there is no material dispute of fact as to whether Stephenson has violated § 1106(a)(1) and that Stephenson is entitled to judgment as a matter of law because: (1) the sale of NFS and Metro, as well as their return to Stephenson, were not transactions between a plan and a party in interest, and (2) to the extent Stephenson took part in the transactions, he was not acting on behalf of the plan and thus was not subject to ERISA fiduciary duties.

B.    SELF DEALING

Plaintiffs also argue that Stephenson violated § 1106(b)(1) and (2). Section (b)(1) prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." The supposed assets of the plan that Stephenson has dealt with "in his own interest" would be the cash used to buy NFS and Metro and then NFS and Metro themselves. But as discussed above, these are not plan assets under 29 C.F.R. § 2510.3-101(a)(2). Accordingly, Stephenson cannot have violated § (b)(1) when he received money, or the companies, from NFSM.

Section (b)(2) prohibits a fiduciary "in his individual or in any other capacity [from acting] in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interest of the plan or the interests of its participants or beneficiaries." As discussed above, the transactions between NFSM and Stephenson involved no plan property. Accordingly, they cannot reasonably be seen as transactions *with the plan*. Thus, even though

Stephenson engaged in a transaction with NFSM in his capacity as owner of NFS and Metro, he was not transacting with the Plan, and therefore cannot be subject to § (b)(2).

C.    TAX CODE

For the same reasons set forth above, the Court finds that the Defendant is entitled to summary judgment on Plaintiffs' tax code claims.

IV.  CONCLUSION

Based on the foregoing, the Court grants summary judgment in favor of Stephenson on causes of action two and five of Plaintiffs' Complaint.  The hearing on this Motion currently set for Wednesday, December 21st is stricken.  It is therefore

ORDERED that Defendant's Motion for Partial Summary Judgment (Docket No. 17) is GRANTED.

DATED   December 8, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge

11

IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

---

| | |
|---|---|
| BRENT MIDDLETON as Trustee of the National Financial Systems Management, Inc. Employee Stock Ownership Plan, et al., <br><br> Plaintiffs, <br><br><br><br> vs. <br><br><br> J. HOYT STEPHENSON, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER REQUIRING SUPPLEMENTAL BRIEFING <br><br><br><br><br><br> Case No. 2:11-CV-313 TS |

---

Before the Court are two motions to dismiss, filed by third party Counterclaim Defendants and Plaintiffs.

## I.  BACKGROUND

In 2003, Defendant J. Hoyt Stephenson incorporated National Financial Systems Management, Inc. ("NFSM").  As part of the incorporation, the board of NFSM created an employee stock ownership plan ("ESOP"), and put all of NFSM's stock into the plan, creating the NFSM ESOP ("the Plan").  Stephenson was designated as a Plan trustee.  NFSM's revenue came in the form of "management fees" paid to NFSM by two companies also owned by

1

Stephenson—National Financial Systems, Inc. ("NFS") and Metronomics, Inc. ("Metro").

Ninety percent of NFS and Metro's profits were paid to NFSM.

On October 15, 2007, NFSM purchased NFS. NFSM made an up front payment for a percentage of the purchase price and issued a promissory note for the balance. On January 15, 2008, NFSM bought Metro in the same manner.

On June 27, 2009, Stephenson entered into "default agreements" with NFSM, in which NFSM acknowledged it was in default on both the NFS and Metro notes. NFSM then transferred all NFS and Metro stock back to Stephenson. Stephenson did not refund any payments from NFSM for NFS and Metro. Stephenson subsequently sold NFS and Metro to another person.

## II. DISCUSSION

Plaintiffs filed a Complaint against Defendant Stephenson alleging that he (1) breached his fiduciary duties under ERISA; (2) engaged in prohibited transactions under ERISA; and (3) violated the Internal Revenue Code.[1] Stephenson moved for summary judgment on the prohibited transaction and Internal Revenue Code claims. The Court granted Stephenson's motion. In so doing, the Court held that "(1) the sale of NFS and Metro, as well as their return to Stephenson, were not [prohibited transactions], and (2) to the extent Stephenson took part in the transactions, he was not acting on behalf of the plan and thus was not subject to ERISA fiduciary duties."[2] Thus, only the first claim of the Complaint remained.

_____

[1]Plaintiffs also included "causes of action" for attorney's fees and injunctive relief. These are remedies, not substantive claims, and are therefore dependent on the three claims listed.

[2]Docket No. 36, at 10.

Stephenson subsequently moved to amend his Answer and add counterclaims against Plaintiffs as well as third parties ("Counterclaim Defendants"). Stephenson's Counterclaims allege that he had not breached any fiduciary duties, but that, if he had, several of the Counterclaim Defendants were co-fiduciaries and had also incurred liability based on their involvement in the same transactions. Stephenson also alleged several other state law claims against Counterclaim Defendants.

In separate motions, Plaintiffs and the third party Counterclaim Defendants move the Court to dismiss the co-fiduciary liability claims and to abstain from ruling on the state law counterclaims. The parties have expended effort on these issues. However, the parties have not addressed the issue of whether the fiduciary claim in the Complaint remains viable in light of the Court's summary judgment order. The Court finds that it will be in a better position to resolve the issues before it if the Court receives supplemental briefing on the issue of whether the remaining ERISA claim is still viable.

It is therefore

ORDERED that Defendant Stephenson, third party Counterclaim Defendants, and Plaintiffs submit supplemental briefing as to how, if at all, the Court's Order dated December 12, 2011, affects the first cause of action in Plaintiffs' Complaint. The briefing should also address how the Court should handle the remaining state law counterclaims in the event that the ERISA fiduciary duty claims of both the Complaint and the Counterclaims are dismissed.

The parties are instructed to submit their briefs, which shall include no more than ten pages of argument, by May 23, 2012.

3

DATED   May 10, 2012.

BY THE COURT:

_____

TED STEWART
United States District Judge

IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRENT MIDDLETON as Trustee of the National Financial Systems Management, Inc. Employee Stock Ownership Plan, et al., | |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO DISMISS |
| v. | |
| J. HOYT STEPHENSON, | Case No. 2:11-CV-313 TS |
| Defendant, Counterclaimant, and Third Party Plaintiff, | |
| v. | |
| BRENT MIDDLETON et al., | |
| Counterclaim and Third Party Defendants. | |

This matter is before the Court on Third Party Defendants Bailey N. Hall, Scott Mee,

Darwin Nelson, Thrive National, Thrive National Corporation, and Thrive Systems's ("Thrive

Parties") Motion to Dismiss Defendant's Third Party Complaint.[1] Also before the Court is

Plaintiffs and Counterclaim Defendants Mike Medell, Brent Middleton, Jamie Sorenson, NFSM,

NFSM ESOP, and Ben Staples's ("NFSM Parties") Motion to Dismiss.[2]

## I. BACKGROUND

In 2003, Defendant J. Hoyt Stephenson incorporated National Financial Systems

Management, Inc. ("NFSM"). As part of the incorporation, the board of NFSM created an

employee stock ownership plan ("ESOP"), and put all of NFSM's stock into the plan, creating

the NFSM ESOP ("the Plan"). Stephenson was designated as a Plan trustee. NFSM's revenue

came in the form of "management fees" paid to NFSM by two companies also owned by

Stephenson—National Financial Systems, Inc. ("NFS") and Metronomics, Inc. ("Metro").

Ninety percent of NFS and Metro's profits were paid to NFSM.

On October 15, 2007, NFSM purchased NFS. NFSM made an up front payment for a

percentage of the purchase price and issued a promissory note for the balance. On January 15,

2008, NFSM bought Metro in the same manner.

On June 27, 2009, Stephenson entered into "default agreements" with NFSM, in which

NFSM acknowledged it was in default on both the NFS and Metro notes. NFSM then transferred

all NFS and Metro stock back to Stephenson. Stephenson did not refund any payments from

NFSM for NFS and Metro. Stephenson subsequently sold NFS and Metro to Third Party

Defendant Bailey Hall.

---

[1]Docket No. 60.

[2]Docket No. 72.

2

Plaintiffs filed a Complaint against Defendant Stephenson alleging that he (1) breached his fiduciary duties under ERISA; (2) engaged in prohibited transactions under ERISA; and (3) violated the Internal Revenue Code.[3]  Stephenson moved for summary judgment on the prohibited transaction and Internal Revenue Code claims, which the Court granted.  In so doing, the Court held that "(1) the sale of NFS and Metro, as well as their return to Stephenson, were not [prohibited transactions], and (2) to the extent Stephenson took part in the transactions, he was not acting on behalf of the plan and thus was not subject to ERISA fiduciary duties."[4]  Thus, all that remained in Plaintiffs' Complaint was the fiduciary duty claim.

Stephenson subsequently amended his Answer and added counterclaims against the NFSM Parties as well as third party claims against the Thrive Parties.  Stephenson's third party Complaint alleges that he did not breach any fiduciary duties, but that, if he had, several of the Third Party Defendants and Counterclaim Defendants were co-fiduciaries and had also incurred liability.  Stephenson also alleged other state law claims against all parties.

In separate motions, the Thrive Parties and the NFSM Parties moved the Court to dismiss the co-fiduciary liability claims and to abstain from ruling on the state law counterclaims and third party claims.

On May 10, 2012, the Court issued an order requiring supplemental briefing.  In that order, the Court noted that though the parties had expended considerable effort on co-fiduciary

---

[3]Plaintiffs also included "causes of action" for attorney's fees and injunctive relief.  These are remedies, not substantive claims, and are therefore dependent on the three claims listed.

[4]Docket No. 36, at 10.

liability and jurisdictional questions, they had not addressed the issue of whether the fiduciary claim in the Complaint remains viable in light of the Court's previous summary judgment order. The Court therefore instructed the parties to submit memoranda responding to that question.  The Court also asked the parties to discuss whether the Court would have jurisdiction over Stephenson's state law counterclaims and third party claims should the Court dismiss the fiduciary duty claim.

Having now considered the parties' submissions, the Court finds, for reasons set forth more fully below, that (1) its previous summary judgment order requires dismissal of the fiduciary claim; and (2) it does not have jurisdiction over Stephenson's remaining state law counterclaims and third party claims.

II.  DISCUSSION

A.      FIDUCIARY DUTY CLAIM

29 U.S.C. § 1104 requires an ESOP fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries."

In their supplemental brief, the Thrive Parties contend that the Court should dismiss the co-fiduciary claim based on its previous Order.  The NFSM parties argue that the Court should reconsider its Order.

The NFSM Parties contend that Stephenson violated his duty by "failing to act solely in the best interests of the ESOP."[5]  Relying in part on *Phillips v. Amoco Oil*,[6] this Court stated in its previous Order:

> [I]t is well accepted that "the ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer.  ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets."[7]  This is true even if the actions taken by the employer negatively affect the value of ESOP assets.[8]  Thus, as a separate ground for denying Plaintiffs' prohibited transaction claim, it appears that if Stephenson was not acting in his role as plan trustee when he participated in the decision to buy or relinquish NFS and Metro, he was not required to comply with fiduciary responsibilities.

> NFSM voted, through its board, to purchase NFS and Metro and to relinquish them.  The purchase was not undertaken or paid for by the Plan.  Though the parties dispute to what extent Stephenson participated in the decision, even if the Court were to assume that Stephenson was fully involved, the outcome would remain the same.  The decision was made for NFSM as a business and not for the ESOP, with NFSM capital by NFSM board members acting in their NFSM capacities.  Thus, the Court finds that, to whatever extent he was involved in the decisions, Stephenson was not subject to fiduciary responsibilities when making them.[9]

The Court's conclusion would thus seem to clearly dispense with the Complaint's fiduciary duty claim, making Stephenson's contribution claim against Third Party and

---

[5]Docket No. 91, at 5.

[6]799 F.2d 1464 (11th Cir. 1986) *affirming* 614 F. Supp. 694 (D. Ala. 1985).

[7]*Phillips*, 799 F.2d at 1471.

[8]*Phillips*, 614 F. Supp. at 717 ("[T]he fiduciary duty provisions of ERISA are not implicated in the sale of a business or a portion of a business merely because the terms of the sale will affect the terms and conditions of contingent future benefits.").

[9]Docket No. 36, at 9-10.

Counterclaim Defendants moot.  Plaintiffs respond that *Phillips* is inapplicable here because Stephenson was not acting as an employer.

First, the Court notes that Plaintiffs have alleged that Stephenson took part in, or sanctioned in some way, NFSM's purchase of NFS and Metro as CEO of NFSM.  To whatever extent Stephenson was involved in the transaction as a buyer on the NFSM side, Stephenson participated as an agent for NFSM, and was thus acting as an employer.  *Phillips*'s language regarding employers is therefore explicitly applicable.  Whatever the consequences for the ESOP of the decision NFSM's board made, the board members were acting as employers and not as ESOP trustees and therefore did not violate any fiduciary duties.

Second, the Court would note that *Phillips*'s rationale is applicable beyond the context of employer-fiduciaries.  "ERISA recognizes that a person may be a fiduciary for some purposes and not others."[10]  Thus, "fiduciary duties under § 1104 attach only to transactions that involve investing the ESOP's assets or administering the plan."[11]  Stephenson, in his role as seller, did not make any decision with respect to the ESOP—he merely offered up assets for sale to NFSM and received the purchase price.  Therefore, to the extent that the NFSM Parties challenge Stephenson's involvement as seller of NFS or Metro, the Court finds that this transaction is not governed by ERISA.

The same reasoning applies to Stephenson's alleged participation in NFSM's decision to return NFS and Metro to Stephenson via default agreement.

---

[10] *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984).

[11] *Martin v. Feilen*, 965 F.2d 660, 666 (8th Cir. 1992).

6

In light of the foregoing, the Court will dismiss the fiduciary duty claim.

B.     JURISDICTION

Remaining before the Court are Stephenson's state law counterclaims and third party claims.  The Court will therefore address whether it has jurisdiction over those claims.

The parties have agreed that the Court has no supplemental jurisdiction if the ERISA fiduciary duty claim is dismissed.  Therefore, the only potential basis for jurisdiction here is diversity.

This Court has jurisdiction over actions between "citizens of different states."[12]  "For purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)(1), state citizenship is the equivalent of domicile."[13]  "'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another.  For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."[14]  "Residence and intent are inextricable elements of domicile.  If unaccompanied by the necessary intent, residence alone is not determinative of citizenship."[15]

The parties agree that Stephenson lived in Wyoming with his family from 2007 through mid-2009, at which point the family moved to Fruit Heights, Utah.  Movants argue that when

---

[12] 28 U.S.C. § 1332(a)(1).

[13] *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983).

[14] *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (citations omitted).

[15] *Bair v. Peck*, 738 F. Supp. 1354, 1355 (D. Kan. 1990) (citing *Gilbert v. David*, 235 U.S. 561, 569–70 (1914)).

Stephenson moved, his domicile changed to Utah. Stephenson argues that he continues to be domiciled in Wyoming.

To establish a new domicile, it is enough to have a "floating intention" to stay in the place indefinitely, even if a party also has "the general desire to return to the former domicile at some undetermined point of time."[16] On the other hand if a party has, at the time of filing, an "existing intention to return [to the original domicile] upon the happening of a reasonably foreseeable event," a new domicile is not established.[17]

"Where it appears that a party may have more than one residence, the court should use a 'totality of evidence' approach to ascertain the party's intended domicile."[18] In *Cressler v. Neuenschwander*, the Kansas District Court compiled a list of factors courts often consider in choosing between two residences:

1. Whether or not an individual votes where he claims domicile;
2. The manner in which an individual lives, taken in connection with his station in life, i.e., whether he rents or buys a home;
3. Whether his family and dependents have moved to the new residence;
4. Whether an individual's belongings have been moved to the new residence;
5. One's relationships with churches, clubs, and investments in the new residence;
6. Whether or not a place of abode is retained in the old state of residence;
7. Whether or not investments in local property or enterprise attach one to the former residence;

---

[16]*Bair*, 738 F. Supp. at 1356 (citing *Crowley*, 710 F.2d at 678).

[17]*Id.*

[18]*Cressler v. Neuenschwander*, 930 F. Supp. 1458, 1460 (D. Kan. 1996).

8

8. Whether one retains affiliations with professional, religious and fraternal life of the former community; and
9. What domicile is claimed for tax purposes.[19]

These objective indicia of intent are accorded far more weight than a parties' self-serving statements of intent.[20]

"The determination of diversity jurisdiction is generally made from the complaint.  When the allegations are challenged, the party asserting diversity jurisdiction has the burden of proving them by a preponderance of the evidence."[21]

Finally, the Court notes that a presumption has "been recognized favoring an established domicile over a newly acquired one."[22]  "On the other hand, the place where a person lives is assumed to be his domicile unless the evidence establishes the contrary."[23]  Thus, while Stephenson has the ultimate burden of proof, movants have the burden of production.  Where a party has recently moved, but evidence exists to support both his former residence and his current residence as domicile, the impact of these countervailing presumptions is limited—the Court instead places its focus on whether a plaintiff can sustain his ultimate burden of proof.[24]

---

[19]*Id.* (citing *Computer People, Inc. v. Computer Dimensions Int'l, Inc.*, 638 F. Supp. 1293, 1295 (M.D. La. 1986) (citing *District of Columbia v. Murphy*, 314 U.S. 441 (1941))).

[20]*Bair*, 738 F. Supp. at 1356 (citing *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 556 (5th Cir. 1985)).

[21]*Id.*

[22]*Id.*

[23]*Cressler*, 930 F. Supp. at 1460.

[24]*Bair*, 738 F. Supp. at 1356.

9

1.  CURRENT RESIDENCE, LOCATION OF FAMILY, MANNER OF LIVING, FORMER ABODE MAINTAINED

The parties agree that Stephenson lived in Wyoming with his family from 2007 through mid-2009, when they moved to Fruit Heights, Utah.  Stephenson states that he still owns a home and operates a ranch in Wyoming and does not own a home in Utah.

Movants respond that Stephenson lives in a home in Fruit Heights, Utah with his wife and children, and that the home is owned by the MLK Family Living Trust, of which Stephenson and his wife are the trustees.  Movants note that there are "family photos on the wall of the den," that Stephenson's vehicles are usually kept at the Fruit Heights home, and that Stephenson's children are enrolled in school in Davis County, Utah.  Stephenson does not deny any of these contentions.

As co-trustee of the trust that owns the home, Stephenson's relationship to the Fruit Heights home is closer to that of owner than lessee, indicating an intent to remain in Utah on a more permanent basis.  This conclusion is strengthened by the presence of Stephenson's wife, children, and belongings in Fruit Heights.  The inference is counterbalanced, however, by Stephenson's retention of a home in Wyoming.  Accordingly, these inferences cancel each other out and the Court finds the evidence inconclusive on this factor.

Stephenson claims that he currently splits his time between Wyoming, Utah, and Georgia because of this and related litigation, but once these matters are resolved he intends to spend most of his time in Wyoming.  Because the Court will not accept self-serving statements of intent that are unsupported by objective indicia, this statement is not accorded any weight on its own.

2.  VOTING

Stephenson avers that he is registered to vote in Wyoming and does not vote in Utah.

Movants respond that Stephenson has not disclosed whether he has voted in Wyoming since

moving to Utah.

Voter registration and voting practice, both pertinent, are separate inquiries.[25]  While

registration to vote in one state may indicate a desire to stay there indefinitely, a registree who

moves away and does not thereafter vote may therein indicate the opposite.  The details of

Stephenson's post-move voting practice are thus required in order for the Court to draw

inferences.  Accordingly, the Court finds that this factor is inconclusive.

3.  DRIVER'S LICENSE

Stephenson also states that he has a Wyoming driver's license and does not hold a Utah

driver's license.  The Court finds that Stephenson's decision to refrain from obtaining a Utah

driver's license is indicative of an intent to return to Wyoming.

4.  LOCATION OF ENTERPRISES

Stephenson states that he operates a ranch in Wyoming.  Movants respond that from July

2009 until March 8, 2012, Stephenson maintained an office in Layton, Utah, from which he ran

various businesses.

---

[25]*See Murphy*, 314 U.S. at 456 ("Whether or not one votes where he claims domicile is
highly relevant but by no means controlling"); *see also* 13E Charles Alan Wright, Arthur R.
Miller & Edward H. Cooper, Federal Practice and Procedure § 3612 (2009) (stating that courts
look to "voter registration and voting practices" when ascertaining domicile).

Whether diversity exists is determined based on the facts as they were at the time a suit is filed.[26]  Stephenson has presented no evidence relevant to whether, at the time of filing, this office was meant to run as a temporary or permanent operation.  Nor has there been any evidence as to the extent of Stephenson's personal involvement in the management of his Wyoming ranch.  The Court therefore finds this factor inconclusive.

5.  TAXES

The parties agree that Stephenson claims Wyoming as his domicile for federal and state tax purposes.  This factor therefore supports a finding of domicile in Wyoming.

6.  AFFILIATIONS

Stephenson makes no allegations that he maintains relationships with any church, club, or fraternal organization in Wyoming.  Movants state that Stephenson holds a leadership position in the LDS church in Fruit Heights, and that his membership is recorded in Utah as opposed to Wyoming.  Stephenson does not contest these statements.  Accordingly, the Court finds that this factor weighs in favor of finding that Stephenson was domiciled in Utah at the relevant time.

7.  OTHER INDICIA

Movants note that Stephenson is a member of GUS Recreation, LLC, S&M Financial, LLC, and a part owner in Greased Lightning, all of which are Utah companies that own boats, vehicles and other items in Utah.  Movants also claim that Stephenson owns jet skis and a trailer with a Utah resident, that the accountant who prepares his tax returns is located in Utah, and that he has a personal bank account at Zion's Bank, in Utah.  In his supplemental brief, Stephenson

---

[26]*Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991).

does not contradict these assertions.  These facts therefore weigh in favor of finding domicile in Utah.

### 7.  CONCLUSION ON JURISDICTION

The Court notes that this is a close issue.  For every objective indication of Stephenson's intent to return to Wyoming at the time of filing, a countervailing fact is alleged from which the Court finds it reasonable to infer that Stephenson intended to remain in Utah indefinitely.  The totality of the evidence therefore presents an ambivalent picture at best.

Stephenson carries the burden of proof by a preponderance of the evidence.  Proof of a state of equipoise between Wyoming and Utah will not suffice—rather, Stephenson must show it is *more likely than not* that he did not intend, at the time of filing, to remain in Utah indefinitely.

As a court of limited jurisdiction, there is a presumption against this Court exercising jurisdiction.[27]  The party invoking jurisdiction therefore bears the burden of establishing that federal jurisdiction exists.[28]  Stephenson has not carried his burden of establishing domicile in Wyoming.  It follows that complete diversity does not exist between the parties and this Court is without jurisdiction over Stephenson's state law counterclaims.[29]

---

[27]*Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted).

[28]*Id.* (citation omitted).

[29]Movants have also contend that the Court should abstain from ruling on the state law counterclaims and third party claims based on a parallel action pending in state court.  Because the Court finds it does not have jurisdiction, it need not consider movants' abstention argument.

III.  CONCLUSION

In light of the foregoing, the Court will dismiss Plaintiffs' fiduciary duty claim against

Stephenson, and will dismiss all other counterclaims and third party claims for lack of

jurisdiction.  It is therefore

ORDERED that the Thrive Parties' Motion to Dismiss Defendant's Third Party

Complaint (Docket No. 60) is GRANTED.  It is further

ORDERED that Plaintiffs and Third Party Defendants' Motion to Dismiss (Docket No.

72) is GRANTED.  The Clerk of the Court is directed to close this case forthwith.

DATED   June 14, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge

14

AO 450 (Rev.5/85) Judgment in a Civil Case

# United States District Court

Central Division for the District of Utah

FILED
U.S. DISTRICT COURT
2012 JUN 18 A 10: 00
DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

BRENT MIDDLETON, as Trustee of the
National Financial Systems Management
Employees Stock Ownership Plan/an
individual, JAMIE SORENSEN, an
individual, and MIKE MEDELL, an
individual,

**JUDGMENT IN A CIVIL CASE**

V.

J. HOYT STEPHENSON,

Case Number: 2:11-cv-00313-TS-PMW

IT IS ORDERED AND ADJUDGED

that plaintiffs' fiduciary duty claim against the defendant is dismissed.  All other counter claims
and third party claims are dismissed for lack of jurisdiction.  The court's prior dismissal of
plaintiffs' claim of ERISA prohibited transactions and the claim of prohibited contract under the
Internal Revenue Code are incorporated in this judgment.

June 18, 2012
_____
*Date*

D. Mark Jones
_____
*Clerk of Court*

*(By) Deputy Clerk*

IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRENT MIDDLETON as Trustee of the National Financial Systems Management, Inc. Employee Stock Ownership Plan, et al., | |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR RECONSIDERATION |
| v. | |
| J. HOYT STEPHENSON, | Case No. 2:11-CV-313 TS |
| Defendant, Counterclaimant, and Third-Party Plaintiff, | |
| v. | |
| BRENT MIDDLETON et al., | |
| Counterclaim and Third-Party Defendants. | |

Before the Court is Defendant J. Hoyt Stephenson's Rule 59(e) Motion for Reconsideration.[1]

The Tenth Circuit has recognized the following grounds as warranting a motion to reconsider under Rule 59(e): "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[2] "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. . . .  It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."[3]  Because Defendant has not alleged any grounds adequate for this Court to reconsider the judgment under Rule 59(e), the Court will deny this request.  The Court would also note that this decision is supported by the Honorable David Sam's finding in a related case that Defendant Stephenson was domiciled in Utah.[4]

It is therefore

ORDERED that Defendant's Rule 59(e) Motion for Reconsideration (Docket No. 100) is DENIED.  It is further

_____

[1]Docket No. 100.

[2]*Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2005) (second alteration to reflect change in Rule 59) (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)).

[3]*Id*.

[4]Memorandum Decision and Order, *Stephenson v. Omni Health & Fitness Club of Mobile, LLC*, No. 1:12-CV-100, (D. Utah Sept. 13, 2012), ECF No. 45.

ORDERED that Third Party Defendants' Motion to Strike (Docket No. 105) is DENIED

as moot.  It is further

ORDERED that the hearing set in this case for November 20, 2012, is STRICKEN.

DATED   September 28, 2012.


BY THE COURT:

_____

TED STEWART
United States District Judge